JOHN CASTREE et al.

*v.*

EMILY B. SHOTWELL et al.

[Submitted January 8th, 1908. Decided January 18th, 1908.]

Testator's will provided that a share of his estate should be held in trust for a daughter, a married woman, to "her sole and separate use" during her life, so that she might enjoy the net income free from the control of any husband, that she should have power to dispose of the principal fund by will, and that, in default of such will, it should go to her heirs.—*Held,* that neither the principal nor the income of the fund could be subjected to the claim of her attorneys for services in advising her in relation to the management of the fund, the fund being in possession of the court, and neither the principal nor income being a "separate estate," but the will having created a mere spendthrift trust.

On petition.

*Messrs. Edward Q. Keasbey* and *George M. Keasbey, pro se.*

*Mr. Burton L. R. Hare* and *Mr. Frederic M. P. Pearse,* for the respondents.

HOWELL, V. C.

A petition is filed in this case seeking to charge Mrs. Pinckney's interest in a fund which is under the control of the court with certain solicitors' fees and costs incurred in the management of her interest, to the petitioners, who are solicitors and counselors of this court.

The will of John Shotwell made the following provision for his daughter, Mrs. Pinckney:

"My executors shall cause at least half of her share in my estate to be safely placed and settled in the hands of suitable and discreet trustees upon trust to her sole and separate use during her life, in such manner that she shall enjoy the net income thereof as it shall accrue, free from the control of any husband, and shall also have power to dispose of the principal fund or property by will, and so that in default of such will the same shall go to and belong to her heirs or next of kin."

The fund in question came under the control of the court in the above-entitled cause, and the income of the portion of the estate to which Mrs. Pinckney is entitled is paid to her from time to time by direction of the court.

Mrs. Pinckney long ago employed the petitioners to aid and advise her in relation to the care and management of the trust fund, and incurred a liability to them of several hundred dollars. The justice of the claim as an indebtedness of Mrs. Pinckney is almost without dispute; not only were the services rendered as charged, but the amount demanded is reasonable and fair, and I shall assume for the purpose of the decision of this matter that Mrs. Pinckney is indebted to the petitioners in the amount set out in their petition.

The petition prays that the court will order the amount of the indebtedness paid to them out of either the capital or income of the fund which is being administered by the court for Mrs. Pinckney's benefit, upon the ground that the fund is one which is set apart for Mrs. Pinckney's "separate use," and that it is therefore under the control of the court by virtue of well-settled equitable rules. In other words, that it is her "separate estate," using the words in their technical sense, and is so subject to be charged by the court in a proper case with debts contracted by her for the benefit of her separate estate. In my opinion no such

charge can be made against the principal of the fund, inasmuch as the respondent has no possible interest in it. She may lend her aid to guard it and protect it and to watch its investment, for out of it comes her income for the period of her life; she has a power of appointment over it, but this is a mere naked power which she may exercise or not, as she pleases. If she does not exercise it there is a devise over to her heirs or next of kin.

Manifestly the capital of the fund is in no sense the separate estate of the respondent. The fund itself is in the actual possession of the court. Mrs. Pinckney has no interest or estate in it, nor any control over it beyond such supervision as may be allowed by the court; she cannot alienate or charge it for her own benefit, nor in any way obtain for her own use a cent of it. I shall therefore dismiss the claim as to that portion of the fund without further comment.

But it is next said that if the capital of the fund may not be reached, the income may be, and that the next installment thereof may be charged with Mrs. Pinckney's indebtedness to her solicitors, and so much thereof as may be necessary may be taken from her to liquidate their claim. This insistment leads to an examination into the nature of the bequest made in the respondent's favor by the will of her father. The provision is that the trustees shall take the legal title to the fund and pay to her the net income thereof as it shall accrue during her life. This, in my opinion, is what is popularly known as a spendthrift trust, and resembles in all its features that class of cases of which *Blair* v. *Hardenburgh, 30 N. J. Eq. (3 Stew.)* *645,* is a familiar example. The income is not property of which the beneficiary before the due day can have either the possession or control, nor of which she can be seized, nor of which she can make present disposition and delivery; until it shall have accrued it is not *in esse;* it is in the last analysis a mere provision for maintenance and support.

It is true that the will provides that the income shall be for her sole and separate use, and be free from the control of her husband; these are proper and apt words for the creation of a "separate use," but, in my view, they add nothing to her right to receive and dispose of the income; they do not create an es-

tate in property. If these words were absent from the will her right to the income would be the same, and they are therefore mere surplusage. *See* v. *Zabriskie, 28 N. J. Eq. (1 Stew.) 422.*

Prior to the passage of the Married Woman's act of 1852, real and personal property of married women were subject at law to certain common law incidents and disabilities. As to her real estate, the husband had the right of possession during the joint lives of himself and the wife, and he had curtesy, in a proper case, after her death. Her identity being merged in his, *t*here remained in her nothing but the bare legal title; all the rest was the husband's. As to personal estate, that became the property of the husband immediately, the marriage operating as a transfer. But the court of chancery, as a court of equity, recognized very early in its history the doctrine of separate estate or separate use by a married woman in property which was devoted to such use by the instrument which created the title in her.

The doctrine is thus summed up by Lord Langdale, M. R., in *Tullett* v. *Armstrong, 1 Bev. 21 (1838).* He says:

"In this court a married woman has, for more than a century, been considered as capable of possessing property to her own use independently of her husband; such property is called her separate estate, and, in respect of it, she is considered as a *feme sole* enjoying, and capable of exercising, her rights as such. The property may be acquired either by contract with the husband before the marriage, or by gift from him, or from any stranger wholly independent of such contract; so far as his legal rights as husband may interfere, the court will treat him as a trustee; and property held by or for the wife to her separate use, if unaccompanied by any restraint, is subject to her power of alienation, and the other incidents of property held by men or single women. * * * Property given to a woman for her separate use, independent of any husband, may, under the authority of this court, be enjoyed by her during her coverture, as her separate estate, although the property originally, or at any subsequent period or periods of time, became vested in her when discovert. In respect of such separate estate, she is by this court considered as a *feme sole,* although covert. Her

38

faculties as such, and the nature and extent of them, are to be collected from the terms in which the gift is made to her, and will be supported ·by this court for her protection. The words 'independent of a husband,' whether express or implied in the terms of a gift, mean no more than that this court will not permit the marital power of the husband to be used in contravention of the enjoyment of the property, according to the terms of the gift. If the gift be made for her sole and separate use, without more, she has during the coverture an alienable estate independent of her husband. If the gift be made for her sole and separate use, without power to alienate, she has during coverture the present enjoyment of an unalienable estate, independent of her husband. In either of these cases she has, when discovert, a power of alienation; the restraint is annexed to the separate estate only, and the separate estate has its existence only during coverture." Cited as authority by Vice-Chancellor Grey in *Bristol* v. *Skerry,* 64 *N. J. Eq.* (19 *Dick.*) 626.

Such a separate estate, or an estate to the separate use of the wife, is one which must necessarily be created by the use of the technical words used in this will, or other words of similar import. Their absence would be fatal to the estate in contemplation. 3 *Pom. Eq. Jur.* § 1102, and notes. An estate of this character is one of which the married woman may be either legally or equitably seized. She may have it conferred upon her by a conveyance or devise to her directly, or a trustee may hold the legal title for her, but in either case the instrument under which she holds must express the idea of separateness by the use of apt words for the purpose, else the marital right of the husband attaches.

The idea of separate estate or separate use in addition to seizin (legal or equitable) includes the right of management, use and control free from the interference of the husband; it also includes the right of alienation and anticipation, and the estate may be charged in equity with the payment of debts contracted by the wife for the benefit of the estate so held by her. *Emery* v. *Van Syckel,* 17 *N. J. Eq.* (2 *C. E. Gr.*) 564 (1867).

These qualities cannot be attributed to an income from a fund held by trustees and administered by the court, which accrues

periodically, and which must be used as it accrues for the support of the beneficiary. Such a provision can have none of the characteristics peculiar to the infinitely larger right which is being considered. The latter is an estate in fact; the former can have no such wide significance.

All the cases cited in the brief submitted on behalf of the petitioners, and all the cases which I have examined relating to the separate estates of married women, are cases in which the married woman was seized and possessed of or entitled to an estate, either legal or equitable, in the property in dispute. There exists, necessarily, and in the nature of the thing, a wide difference between a spendthrift trust and a separate use. They are derived by entirely different methods and proceed upon entirely different principles.

The several married woman's acts which have been passed in this state have not distinguished between property subject to its common law incidents and property held under the equitable tenure of separate use. These acts, which are held to have affected the estate of the wife, and not that of the husband (*Prall v. Smith, 31 N. J. Law (2 Vr.) 244*), declare that the real and personal property of a married woman which she owned before or at the time of her marriage, or which she acquired subsequently thereto, and the income thereof, and all her wages and earnings, shall be her sole and separate property as if she were a single woman, and she is made liable at law for her debts as if she were a *feme sole.* The income from a trust fund was held by Chancellor Runyon, sitting as ordinary in the case of *See v. Zabriskie, 28 N. J. Eq. (1 Stew.) 422 (1877)*, to be secured to the married woman, who was the *cestui que trust,* by the married woman's acts; and this without regard to the question whether the income was specifically stated to be for the separate use of the married woman or not.

In *Perkins v. Elliott, 23 N. J. Eq. (8 C. E. Gr.) 526 (1872)*, the court of errors and appeals, speaking by Chief-Justice Beasley, holds that the entire effect of the act for better securing the property of married women is to create in favor of the married woman that kind of estate which would result if the same statutory words had been inserted in the deed or will

under which the married woman took title to the lands; that the words for the creation of a separate use are technical, have been long in use, and that their meaning and legal effect has been fully established; that they should have the same force whether found in a private instrument or in a public statute, and that the purpose of the law is entirely effectuated by putting in the wife that title to her property which is so well known to equity under the designation of her separate estate; and that it would certainly seem to be greatly incongruous to have two rules of construction appertaining to the same language, one to be applied to estates limited by settlement, and the other to estates arising by force of the same terms under the statutory provision.

And the same remedies apply to the statutory estate as formerly applied to the equitable estate. *Armstrong* v. *Ross, 20 N. J. Eq. (5 C. E. Gr.) 109.*

It will be seen, therefore, from this exposition of the nature of a married woman's equitable or statutory estate held for her separate use, that it differs quite materially from the situation disclosed in this case; that there is no analogy between such an estate and an income derived from a fund set apart for mere maintenance and support; that while this court might charge the estate of a married woman which is set apart for her separate use with debts contracted by her for the benefit of her separate estate, there is no method by which the court can reach the income derived from a spendthrift trust or a trust for mere maintenance and support out of the income of the trust fund.

In this case the income is appropriated to the use of the wife as it accrues, and it is true that without regard to the statute it would be subject to her use and disposal, but it is not an estate which this court can encumber, nor of which anyone can deprive her. If the petitioners should recover a judgment at law on their claim they would be unable to enforce payment out of either the principal or income of the fund in question; and I must therefore conclude that, while the claim appears to be a just one, there seems to me to be no remedy for the petitioners in this court.