Job S. L'Hommedieu died on the 14th day of August, 1922, leaving a last will and testament, wherein he gave to his son, Arthur, the use of certain real property so long as *Page 555 
the latter might continue to occupy the same, and remitting all the debts due the testator from the son. The important paragraph of the will is the fourth, and reads as follows:
"Fourth. I give, bequeath and devise all the rest and residue of my property, whether real or personal, to my executor hereinafter named, during the lifetime of my son, Arthur R. L'Hommedieu, in trust, nevertheless, to pay the net income of said property after paying and deducting necessary charges to my son, Arthur R. L'Hommedieu, during his natural life, after the death of my son, Arthur R. L'Hommedieu, I give, bequeath and devise all the rest and residue of my property, not hereinbefore disposed of, whether real or personal, to my granddaughters, Martha L'Hommedieu and Elizabeth L'Hommedieu, to be equally divided between them, share and share alike, their heirs and assigns forever, should either one die without issue, then her share to go to the one surviving."
The fifth paragraph directs the executor to keep the testator's investments as they shall be found at the time of his death
"so long as they are desirable in the judgment of my executor and my son, Arthur R. L'Hommedieu, but when any of said investments are realized upon or it is desirable to invest any of the money belonging to my estate, said executor is directed to invest the same in good and safe bonds and mortgages in his discretion, provided that before any such investment is made, however, said executor must first obtain the consent of my said son, Arthur R. L'Hommedieu, to the same."
The next and last paragraph appoints the defendant Crisman executor. Much stress is laid upon this peculiar veto power by counsel for the complainants, but I do not think it of any importance. On April 27th, 1925, the defendant Arthur executed a voluntary assignment of all his right, title and interest in and to the estate of the decedent to the complainants, who are his daughters, are sui juris, and who have a vested interest in the estate, as shown by the fourth paragraph of the will herein above quoted.
The main question mooted at the final hearing, and the one upon which the decision of this case will be rested, is whether the will presents the ordinary situation of splitting up an estate into a life tenancy and remainder, or the creation of a trust for the support and maintenance of one during *Page 556 
his lifetime or other period. If the former, then the complainants as remaindermen, having gotten in the life estate, are entitled to the present enjoyment of the estate of the testator. Schmeider v. Meyer, 96 N.J. Eq. 69. But, on the contrary, if the will has established that species of trust which has come to be called a spendthrift trust, then no effect should be given to the assignment upon which the complainants rely.
It appears from the testimony that the defendant Arthur L'Hommedieu had been very unsuccessful as a business man at the time of the execution of the decedent's will; that he was involved in most unfortunate troubles which had arisen through no fault of his or any other person, but which, undoubtedly, were, at least, partly responsible for his failure, and that he was largely indebted to the testator, to whom he had been obliged to turn frequently for financial assistance. The executor testified to a conversation with his testator, which clearly showed that the latter was much concerned about the future of his son where dominion over money was involved.
The testimony by which the foregoing facts were established was admitted over the objection of the complainants, on the ground that it was incompetent to change the language of the will, and I have been driven to the belief that the objection should have been sustained, and that I cannot give effect to the proofs so adduced. My understanding of the policy in this state is, to restrict the use of parol evidence to explain the contents of a will to those cases where a latent ambiguity occurs. Griscom v.Evens, 40 N.J. Law 402; affirmed, 42 N.J. Law 579. Mr. Justice Depue wrote the opinion in the supreme court, and the rule contained in the language now quoted was not questioned in the court of errors and appeals:
"By the statute a writing is made indispensable to the existence of a will, and what has been written cannot be added to, detracted from or altered by extrinsic evidence. The functions of the court are to ascertain the intention of the testator from the language of the will. Extrinsic evidence *Page 557 
may be resorted to, which, in its nature and effect, is simply explanatory of what the testator has written, but no evidence can be received for the purpose of showing what he intended to have written. Wigm. Wills § 9. In every case of a controverted construction the sole question is non quod voluit sed quoddixit. Extrinsic evidence of the circumstances, situation and surroundings of the testator, and of his property, is legitimate to place the court which expounds the will, in the situation of the testator who made it, and thus enable the court to understand the meaning and application of the language he has adopted; but the testator's intention must, ultimately, be determined from the language of the instrument, as explained by such extrinsic evidence, and no proof, however conclusive in its nature, can be admitted with a view of setting up an intention inconsistent with the writing itself. 2 Tayl. Ev. § 1082. No difficulty, however great, in deciphering the obscure language of the devise, or in unraveling the intricacies in the testator's descriptions of the persons or property to which his testamentary disposition should apply, will justify resort to such evidence. With the assistance of such explanatory evidence as has been mentioned, the court may be called upon to harmonize the conflicting provisions of the will, and to reject such descriptive parts as are only false demonstrations; but if, with the aid of such evidence, the testator's meaning cannot be ascertained, the will will be simply void for uncertainty. Wigr. Wills prop VI.
"The only exception to this legal rule is that the declarations of the testator may be resorted to in case of a latent ambiguity, which arises where there are two or more persons or things, each answering exactly to the person or thing described in the will. In such event, parol evidence of what the testator said may be lawfully adduced to show which of them he intended; but such evidence will not be allowed to show that he meant a thing different from that disclosed in the will." Den v. Cubberly, 7Halst. 308; 2 Tayl. Ev. §§ 1092, 1093; Hawk. Wills § 9. *Page 558 
Otherwise, the value of a decedent's solemn declaration of the ultimate disposition of his property will be fraught with such uncertainty as to cause a confusion that will be destructive of property rights. In the case at bar, the will confers upon the defendant Arthur an absolute right of property in the income of his father's estate, but the effect of the testimony would be to entirely change the testamentary disposition so that the legatee would have only a qualified right to receive payments of income as they might accrue. If the testator had desired to restrict the enjoyment of the income to Arthur and no one else, his purpose could have been effected by the use of appropriate language in the will. I do not understand it to be necessary to denominate the beneficiary a spendthrift in that harsh word, but that some indication must be given of the intent to restrict it to his personal benefit without recourse to creditors or assignees. For example, Vice-Chancellor Leaming decided, in Castree v.Shotwell, 73 N.J. Eq. 590, that a spendthrift trust was established by a devise to trustees, to the sole and separate use of a married woman "in such manner that she shall enjoy the net income thereof as it shall accrue." (Italics mine.) Another familiar method of attempting to protect the beneficiary against his own improvidence is to provide that he shall enjoy the income unless he shall become bankrupt. It is, of course, recognized that one does not wish to hurt the feelings of an object of his love by the use of harsh or other language that may hold the latter up to ridicule.
The only safe rule to pursue is the one indicated. A testator is thus empowered to direct the distribution of his estate as he shall see fit, within the limits required by law, by the unequivocal language of his last will and testament, and if he does not see fit to cut down the bequest therein made he should be presumed to have given an unqualified interest or estate of the character described in the will.
Vice-Chancellor Leaming, in Camden Safe Deposit and Trust Co.
v. Schellenger, 78 N.J. Eq. 138, and Brooks v. Davis,82 N.J. Eq. 118, has pointed out that the authorities of this state are not closed on the question of the validity of *Page 559 
a spendthrift trust, and I, of course, am not called upon to determine that question, by reason of the fact that whatever may have been in the mind of the testator no such trust has been established in this case.
With regard to the assignment to the money loaners in Philadelphia, I do not feel that any decision should or can be expressed. Those assignees are not before the court. Until they are brought in and their rights settled, the executor will be protected by any order or decree that may be made, and none will be made except on notice or by consent as to form.