KEATON v. STEPHENSON et al.

No. 34258. Feb. 12, 1952.

*240 P. 2d 1088.*

F. Leonard Sible and Hal D. Leaming, Oklahoma City, for plaintiff in error.

Whitten & Whitten, Oklahoma City, for defendants in error.

BINGAMAN, J. The plaintiff in error, Clarence J. Keaton, beneficiary of a trust fund set up under the will of J. R. Keaton, deceased, appeals from the judgment sustaining a writ of garnishment against his interest in such fund.

By the will of J. R. Keaton, dated October, 1945, a spendthrift trust was

set up for the benefit of plaintiff in error and others. One seventh of the income from the trust is to be distributed to Clarence J. Keaton from time to time during his lifetime, and at his death the corpus of the fund goes to other designated persons. The testator died on April 3, 1946, and his estate has been duly administered in the county court of Oklahoma county. The trust property has been distributed to the trustees and the sole question for determination here is the right of judgment creditors of. the beneficiary to garnishee the income from the fund.

The will was made after the effective date of 60 O. S. 1951 §175.25. After the will was admitted to probate, and on December 10, 1946, the trustees made their first distribution of income, under which the sum of $1,000 was distributed to Clarence J. Keaton. No contest was made in connection with the probate of the will. On October 2, 1947, Clarence J. Keaton, apparently being dissatisfied with the handling of the estate, entered into a contract of employment with Logan Stephenson and C. W. Clift. Stephenson is now deceased and the cause has been revived in this court in the name of his administratrix, Ethel M. Stephenson. Under the written contract of employment the attorneys were to represent Keaton and protect his interest in the estate. He paid them a $50 cash retainer and agreed to pay them 25 per cent of all monies or properties recovered by him from the estate. After the employment the attorneys learned that there were no irregularities in connection with the administration proceedings and that the closing of the estate was being delayed to obtain clearance from the proper taxing authorities in regard to the inheritance taxes on the estate. On October 22, 1947, tax receipts were obtained covering this inheritance tax, and on November 1, 1947, the final account of the executors was filed. On the same date the sum of $2,500 was distributed to Clarence J. Keaton by the trustees.

The estate was closed without contest, but difficulties arose between Clarence J. Keaton and his attorneys in regard to their fee. In January, 1948, they instituted suit against Keaton for the sum of $888.88, which it was contended the plaintiff in error owed them. Keaton defaulted, and on March 1, 1948, judgment was rendered for the amount sued for. Neither the petition nor the judgment disclosed the nature of the claim sued on, nor how the amount was arrived at. Since the amount of the judgment closely approximates 25 per cent of the $3,500 that had been previously distributed to Keaton, we assume it was a suit on the contract and that the slight variance is an interest item.

The judgment was not paid and the judgment creditors caused garnishment to be issued to the trustees seeking to apply Keaton's interest in the earnings of the trust fund toward the payment of their judgment. On hearing the trial court found the judgment rendered was for necessary services rendered by the judgment creditors to Keaton and directed that the garnishment be sustained and $954.44 of such funds be paid to the plaintiffs in satisfaction of such judgment.

The right of the settler to create the spendthrift trust and the sufficiency of the trust provisions of the will to accomplish such purpose is not disputed. The validity of such a trust was recognized by this court in Frensley v. Frensley, 177 Okla. 221, 58 P. 2d 307. It is conceded the creditors have no right to reach such fund unless it be under the provisions of 60 O. S. 1951 §175.25, wherein it is provided that the property may be reached in the hands of the trustees for "necessary services rendered or necessary supplies furnished to the beneficiary, . . . or a judgment based on any such claim."

Whether attorneys fees are necessary services within the terms of this statute has not been previously considered by this court. Similar statutes have been construed. Under 15 O. S. 1951 §20, a minor cannot disaffirm an other-

wise valid contract for "things necessary for his support." By 15 O. S. 1951 §22, an incompetent is made liable for the reasonable value of things furnished to him, "necessary to his support." Considering these statutes as applied to fees for the services of attorneys, this court, in the case of a minor, in Grissom v. Beidleman, 35 Okla. 343, 129 P. 853, held:

"Where the services pertain to the defense of the liberty or person of the minor, or the prosecution of actions for an injury thereto, that the same should be classed as a 'necessary', and an action lie against the minor for a reasonable recovery for attorney's fees; but where the legal services are rendered in behalf of the minor in relation to his property, without the intervention of a legal guardian, no recovery for such services should be had in an action at law."

To the same effect was Watts v. Houston, 65 Okla. 151, 165 P. 128, where we held:

"Attorney's fees on account of services rendered in behalf of the estate of a minor are not 'necessaries'. . . ."

In the case of an incompetent, where the contract was made with the guardian, without prior approval by the court, we held in O'Mealey v. Grum, 186 Okla. 697, 100 P. 2d 265, that the claim was:

"Subject to the scrutiny of the county court, as to whether the claim is for necessities and the charge is reasonable."

The New York court, in Re Williams, 187 N. Y. 286, 79 N. E. 1019, held the trust fund could be reached for an attorney fee where the trustee refused to carry out the terms of the trust and pay out the income to the beneficiary. However, the Court of Appeals of Illinois, in McKeown v. Pridmore, 310 Ill. App. 634, 35 N. E. 2d 376, held:

"Where trustee of a spendthrift trust refused to pay beneficiary payments under the trust, and beneficiary employed an attorney on a contingency contract and the attorney was successful in a suit against the trustee and secured payments for the beneficiary, the attorney did not have a lien on the proceeds, since the spendthrift clause was effective to prevent the assignment of any interest by the beneficiary and the attorney's lien which was in effect an assignment of an interest, could not attach to such interest."

That court in the quoted case held the assignment for attorneys fees stood in the same category as any other assignment and was ineffective to transfer the interest. . To the same effect is In re Lee's Estate, 214 Minn. 448, 9 N. W. 2d 245, and Castree v. Shotwell, 73 N. J. Eq. 590, 68 Atl. 774.

We conclude the attempted assignment or transfer of 25 per cent of the income from the fund was ineffective and created no interest in the fund.

Clearly the services rendered by the attorneys did not pertain to the liberty or person of the beneficiary of the trust. The claim, if sustained, must therefore be based upon some showing of necessary service to the beneficiary in the administration of the trust fund. There was no refusal of the trustees to pay over the funds in accordance with the terms of the trust and consequently there is no basis for the contention that the services were necessary to accomplish such a purpose. No mismanagement by the trustees is shown or claimed. There was no contest over the provisions of the will and no dispute about the terms of the trust. The beneficiary was not an heir of the estate and he was not interested in contesting the will. The only interest of this beneficiary was in the trust provisions.

It is contended the services of the attorneys expedited the closing of the estate. This was not shown by the evidence as it appears the estate was closed as soon as possible after clearance was obtained on the inheritance tax. Since the trustees were engaged in administering the trust and distributing the trust income prior to the closing of the estate it is doubtful

whether an early closing of the estate made any difference or was of any benefit to either the beneficiary or the trust estate.

Assuming the spendthrift trust income might be diverted to the satisfaction of an attorney fee for disinterested advice in regard to the administration of the fund, a reasonable fee would necessarily be based upon the size of the fund and the time necessary to make an investigation and advise with the beneficiary in regard thereto. Considering the size and condition of the fund involved and the time necessarily consumed in obtaining the information on which to base the advice, it appears the retainer fee here paid would be a reasonable charge for such services. The spendthrift trust income could not therefore be reached for any further fee.

The judgment is reversed, with directions to dissolve the garnishment.

CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur.