**Palmer K. SCHREIBER**

v.

**Christopher G. KELLOGG.**

No. 90–5806.

United States District Court, E.D. Pennsylvania.

April 21, 1994.

Stanley R. Wolfe, Stuart J. Guber, Berger & Montague, P.C., Philadelphia, PA, for plaintiff.

Palmer K. Schreiber, pro se.

Arnold S. Klein, Kelley, Drye & Warren, New York City, Thomas More Marrone, Philadelphia, PA, Brett A. Datto, Nicholas A. Clemente, P.C., Gavin P. Lentz, G. Alexander Bochetto, Bochetto and Lentz, P.C., Philadelphia, PA, for defendant.

John E. Caruso, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for trustees.

## MEMORANDUM

BARTLE, District Judge.

Before the court is the motion of plaintiff, Palmer K. Schreiber ("Schreiber"), to allow him to execute on property of defendant, Christopher G. Kellogg ("Kellogg"), to satisfy a $512,863.76 judgment of this court. The judgment resulted from Kellogg's breach of contract for counsel fees owed to Schreiber, his former lawyer. Schreiber seeks to execute on Kellogg's sizeable income from a trust under the will of his great-grandfather, Rodman Wanamaker. The crucial issue is whether defendant's trust income is subject to a spendthrift provision so as to prevent alienation. The court held an evidentiary hearing on the pending motion.

This matter takes us back some 66 years, to the death of Rodman Wanamaker on March 9, 1928. He left a will and codicil under which he created a trust for his children and their issue.[1] For many years the principal asset of the trust was the stock of John Wanamaker, Philadelphia ("JWP"), a major department store. On March 7, 1978, Carter, Hawley, Hale, Inc. made an offer for all outstanding stock of JWP consisting of stock and cash worth approximately $40 million. Schreiber and his client Kellogg, who was at that time a contingent income beneficiary of the trust, undertook efforts to increase the sale price.[2] Partially as a result of the efforts of Schreiber and Kellogg, the store was sold in May, 1978 for $60 million—an increase of some $20 million over the initial offer. On October 10, 1978, Schreiber filed a Fee Petition with the Orphans' Court of Montgomery County, Pennsylvania, seeking $650,000 from the trust corpus for his services in connection with the JWP sale.

According to plaintiff, he and Kellogg had an oral fee agreement concerning his services performed in connection with the sale. At the Orphans' Court hearing on his fee petition, Schreiber testified that in order to allow Kellogg to engage the services of backup counsel for litigation support, he absolved Mr. Kellogg of personal liability and, "agreed to look solely to the court for any remuneration [he] would be entitled to in connection with the sale of John Wanamaker's." (N.T. Schreiber claim for Counsel Fees, 9/17/79). Schreiber alleges that in exchange for his waiver, Kellogg and backup litigation counsel agreed that Schreiber would receive, as a referral fee, one-third of the fees paid by Kellogg to the backup counsel in connection with the sale of JWP.

Ultimately, the Orphans' Court awarded Schreiber $100,000 in counsel fees and approximately $17,000 in interest from the corpus of the trust. He later received a judgment against another attorney involved in the sale of JWP in the amount of $87,907.87 plus $15,000 in counsel fees and interest of $6,138.26, for breach of their fee sharing agreement.

---

1. The will did not expressly provide that Wanamaker's great-grandchildren would succeed to their parent's share of income upon their parent's death. However, an opinion by Judge Alfred Taxis, of the Orphans' Court of Montgomery County, Pennsylvania, held that a great-grandchild would take his or her deceased parent's share of income prior to the termination of the trust.

The court reasoned that the will as a whole evidenced a "general per-stirpital plan of distribution by the testator," and that the failure to include explicit language was an oversight of the scrivener. The defendant, Kellogg, became a contingent income beneficiary of the trust as a result of this decision. *In re Wanamaker Estate*, Orphans' Court of Montgomery County, No. 35,-456 (April 26, 1946).

2. Kellogg's mother, Fernanda W. Kellogg, was the granddaughter of Rodman Wanamaker and the income beneficiary at the time. Mrs. Kellogg died in August, 1989, at which time her son became an income beneficiary.

On October 31, 1978, subsequent to the sale of the JWP stock, Schreiber, on behalf of his client Kellogg, filed in the Orphans' Court of Montgomery County a Petition for Surcharge and Removal of Trustees, Disqualification of Counsel for the Trustees and Objections to Account ("surcharge action"). The petition alleged various acts of negligence, mismanagement and breach of fiduciary duty. The Orphans' Court denied the Petition to Disqualify Counsel for the Trustees on January 17, 1979. Schreiber, on behalf of Kellogg, appealed to the Pennsylvania Supreme Court. That court later quashed the appeal.

In early May, 1981, the parties agreed to a settlement of the entire surcharge action. The settlement obligated the trustees to hold regular meetings, make certain information available to the beneficiaries, and file a plan for the establishment of a retirement age for trustees. It also exonerated the trustees of any surcharge liability, required Kellogg to pay his own counsel fees and to obtain releases of any claims against the trust from counsel, and allowed the trustees to collect their fees from the trust corpus. Kellogg was not appointed a trustee and no trustees were removed.

On May 13, 1981, Schreiber and Kellogg signed a fee agreement which became the subject of this lawsuit. In sum, the agreement provides that Kellogg would pay Schreiber $80,000 with interest at a rate which was "commercially competitive considering risk and terms of payment." It further states, "[T]he Counsel Fee shall be in full satisfaction of your obligations to me for legal services rendered by me in connection with the Surcharge Action or in connection with your obligations to me for the Referral Fees." The "referral fee" refers to the agreement between Schreiber, Kellogg and backup counsel that Schreiber would receive one-third of any fees paid to the backup counsel. Kellogg only paid $5,000 to backup counsel. However, the backup counsel released Kellogg from liability for any remaining fees. The May 13, 1981 agreement states that Kellogg agreed to reimburse Schreiber directly for the $11,402.92 which

Schreiber would have received had Kellogg paid the full amount due.

Kellogg never paid the amount set forth in the May 13, 1981 agreement, and Schreiber instituted this action to collect his fees. After a non-jury trial, this court found that the May 13, 1981 agreement constituted a valid written contract for the payment of fees and entered judgment in favor of plaintiff for fees and interest of $512,863.76.

After this court denied defendant's post-trial motions, plaintiff sought to execute on the judgment. Defendant appealed the judgment but did not and has not filed an appeal bond. This court refused to stay execution of the judgment pending appeal. *Schreiber v. Kellogg*, 839 F.Supp. 1157 (E.D.Pa.1993). As stated above, defendant receives a sizeable monthly income as a beneficiary of the Wanamaker trust. Because of apparent difficulties in executing on defendant's other assets, plaintiff seeks to attach this interest to satisfy the outstanding judgment.

■ Defendant first contends that this court lacks jurisdiction over plaintiff's motion because of the pendency of his appeal to the Third Circuit. This argument is without merit. The mere pendency of an appeal, without a stay, does not operate to stay execution proceedings. *In re Spier Aircraft Corporation*, 137 F.2d 736, 738 n. 3 (3d Cir. 1943); *Printing & Paper Trades v. Cuneo Eastern Press, Inc.*, 72 F.R.D. 588, 590 n. 1 (E.D.Pa.1976).

■ The trustees of the Wanamaker trust have filed a memorandum in which they contend that the Orphans' Court has exclusive jurisdiction to construe the will of Rodman Wanamaker. Alternatively, they assert that this court should abstain from exercising jurisdiction.

The contention that this court lacks jurisdiction is incorrect. As the Supreme Court stated,

> it has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits "in favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere

with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.

*Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946). Citing, *Waterman v. Canal–Louisiana Bank & Trust Co.,* 215 U.S. 33, 43, 30 S.Ct. 10, 12, 54 L.Ed. 80 (1909). The trustees rely on 20 Pa.Cons.Stat.Ann. § 711(2) which provides that the Orphans' Court division shall have jurisdiction over:

> The administration and distribution of the real and personal property of testamentary trusts, and the reformation and setting aside of any such trusts ...

As plaintiff points out, however, this statute merely refers certain matters to a particular division of the Common Pleas Court. A state statute cannot divest a federal court of jurisdiction over its execution proceedings.

■ The trustees have cited no case which stands for the proposition that this court lacks jurisdiction over the instant matter, but have instead pointed to cases where the federal court has abstained from exercising jurisdiction. In *Ryan v. First Pennsylvania Banking and Trust Co.,* 519 F.2d 572 (3d Cir.1975), the wife and children of the beneficiary of a spendthrift trust brought action against the trustee to enforce a state judgment for support payments and to restore to the trust income allegedly diverted for the payment of a loan made by the bank to the income beneficiary. The district court dismissed the action for lack of jurisdiction. In the alternative, it held that if it had jurisdiction, the facts presented an appropriate case for abstention. Subsequent to the dismissal, defendant filed in the Orphans' Court Division of the Common Pleas Court for Delaware County an account as trustee of the spendthrift trust. The Court of Appeals held that the district court had jurisdiction over all the claims and that abstention was improper with respect to the motion to compel support payments from the trust. With respect to the motion to restore income to the trust, the court held that the district court properly abstained from deciding the question because it involved unresolved state law questions and was similar to a claim of mis-

management, over which the Orphans' Court has exclusive jurisdiction under Pennsylvania law. *Id.* at 575.

In *Reichman v. Pittsburgh National Bank,* 465 F.2d 16 (3d Cir.1972), the Court of Appeals held that the district court had jurisdiction over a surcharge action brought against the trustee of a trust. However, the court upheld the district court's dismissal of that action based on the abstention doctrine because a pending proceeding in the Orphans' Court encompassed the same issues presented in the federal action. The court there found that abstention promoted administrative efficiency and convenience.

■ The Supreme Court has emphasized that "[t]he doctrine of abstention ... is an extraordinary and narrow exception to the duty of a district Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188, 79 S.Ct. 1060, 1062, 3 L.Ed.2d 1163 (1959). In fact, this court has a "virtually unflagging obligation to exercise [its] properly invoked jurisdiction" unless abstention is appropriate under one of the established doctrines. *Grode v. Mutual Fire, Marine and Inland Ins. Co.,* 8 F.3d 953 (3d Cir.1993) quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). No party has directed this court to a federal abstention doctrine applicable to the instant facts.

■ The district court is not free to abstain merely because state law is unclear. *Meredith v. Winter Haven,* 320 U.S. 228, 234–37, 64 S.Ct. 7, 10–12, 88 L.Ed. 9 (1943). In *Colorado River Water Conservation District v. United States* the Supreme Court explained that abstention is appropriate where there exist "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Furthermore, the presence of a strong federal interest in retaining jurisdiction weighs against abstention. *Izzo v. River Edge,* 843 F.2d 765 (3d Cir.1988).

In the present case, the federal court has a vital interest in the issue of enforcement of its judgments. No such federal interest was present in either *Ryan* or *Reichman.* The substantial federal interest outweighs any state interest in whether Kellogg's income from the Wanamaker trust is protected by a spendthrift clause. Finally, administrative convenience and efficiency would not be served by abstention. Unlike in *Ryan* and *Reichman,* we are not in the preliminary stages of the federal lawsuit. This court has already held a trial and is intimately familiar with the issues involved. Consequently, abstention is not warranted ·under these circumstances.

■ We now turn to the merits of the case. In a proceeding to execute on a judgment, this court is bound, pursuant to Rule 69(a) of the Federal Rules of Civil Procedure,[3] to follow state law in determining whether the defendant has an interest in property which is subject to execution. *United States v. Yazell,* 382 U.S. 341, 355–56, 86 S.Ct. 500, 508, 15 L.Ed.2d 404 (1966); *Fink v. O'Neil,* 106 U.S. 272, 1 S.Ct. 325, 27 L.Ed. 196 (1882); *Custer v. McCutcheon,* 283 U.S. 514, 51 S.Ct. 530, 75 L.Ed. 1239 (1931). In the absence of a federal statute providing otherwise, property which is exempt from attachment under state law is not subject to attachment in execution of a federal judgment. *Yazell supra; Fink supra.* No relevant federal statute has been called to our attention. Therefore, the question before the court is whether, under Pennsylvania law, Kellogg's income interest in the Wanamaker trust may be attached in execution of this court's judgment.

■ The parties strongly disagree as to whether a spendthrift clause protects Kellogg's interest in the trust. A spendthrift trust exists where there is an express provision forbidding anticipatory alienation and attachments by creditors. *See e.g. In re Keeler's Estate,* 334 Pa. 225, 3 A.2d 413

---

**3.** Rule 69(a) of the Federal Rules of Civil Procedure provides:

Process to enforce judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. . . .

---

(1939); *Wilson v. United States,* 372 F.2d 232 (3d Cir.1967). Such provisions are unquestionably valid and enforceable in Pennsylvania. *See e.g. Wilson, supra and cases cited therein.* Creditors, including judgment creditors, generally may not reach an interest in a trust which is protected by a spendthrift provision. *See Lippincott v. Lippincott,* 349 Pa. 501, 37 A.2d 741 (1944).

■ When interpreting a will under Pennsylvania law, the court seeks to ascertain the intent of the testator:

The intention of the testator is the pole star in the interpretation of every will and that intention must be ascertained from a consideration of the entire will, including its scheme of distribution as well as its language, together with all the surrounding and attendant circumstances.

*Estate of Wanamaker,* 399 Pa. 274, 159 A.2d 201, 203 (1960) (citations omitted). No specific form of words is required to create a spendthrift provision so long as the intent of the testator can be ascertained from the will and surrounding circumstances. *See e.g., Ewalt v. Davenhill,* 257 Pa. 385, 101 A. 756, 758 (1917); *Winthrop Co. v. Clinton,* 196 Pa. 472, 46 A. 435 (1900). "The intent to create a spendthrift trust is not to be set aside merely because it is not clearly expressed by the scrivener . . ." *Riverside Trust Co. v. Twitchell,* 342 Pa. 558, 20 A.2d 768, 770 (1941). *See also, In re Shower's Estate,* 211 Pa. 297, 60 A. 789 (1905); *Appeal of Grothe,* 135 Pa. 585, 19 A. 1058 (1890).

■ The will of Rodman Wanamaker establishes the trust at issue in Paragraph Third. Mr. Wanamaker directed the trustees to pay the annual income of the trust to each of his children, such that the income:

Shall then annually be divided equally between my three (3) children, Fernanda W. Heeran, John Wanamaker, Jr., Marie Louise Munn, *during their life for their sole and separate use, not to be anticipated, or assigned by them, in any manner*

*whatever, nor subject to any attachment, alienation or sequestration for their debts, contracts or engagements.*

\* \* \* \* \* \*

In the event of the decease of one of my said children then the income to which said deceased parent would have been entitled, had they lived, shall then be divided into two parts. One (1) share thereof shall be equally divided among the children, then living, of such deceased child, so that said children, or in the event of there being but one child surviving, my said deceased child, shall enjoy to the extent of one-half (½) the share his, her or their parent would have received had they continued to live. That this provision of descent shall apply to all of my children, and, in the event of all of said three (3) children dying, then the share to which each of such child, or children, was respectively entitled, during their lifetime, to the one-half (½) extent, above provided for, shall go to and be enjoyed by the children, then living of such deceased child or children.

(emphasis added).

In Paragraph Eighth, Mr. Wanamaker restates the grant of income and disposes of the principal of the trust:

Eighth. In further Trust, on the part of my said Trustees, to hold said Capital Stock, and all dividends, income or money derived therefrom, *subject to the provisions herein previously contained,* for the benefit of all the child, or children, of all the children of my three (3) children, for and during the term of their natural life, or lives, of such of my said grandchildren, and for the period of twenty-one (21) years after the date of the decease of the last surviving grandchild. In further Trust, at the expiration of the period of twenty-one (21) years, after the date of the decease of the last surviving grandchild, of my children, then said stock, or the proceeds which may be derived therefrom, to be equally divided, share and share alike, into as many parts as there may then be great-grandchildren of mine, surviving ...

(emphasis added).

All parties concede that Paragraph Third imposes spendthrift protection on the inter-

ests of Mr. Wanamaker's children. Plaintiff contends that because the spendthrift clause is worded so as to preclude Mr. Wanamaker's children from alienating the income but does not repeat the restriction with respect to the gift over to his grandchildren, no spendthrift protection is imposed on the income of his grandchildren and their descendants. Schreiber further contends that the direction that the trustees are "to hold said Capital Stock, and all dividends, income or money derived therefrom, *subject to the provisions herein previously contained,*" (emphasis added) does not incorporate the spendthrift provision but merely indicates that a gift made in a preceding paragraph will take precedence over a later stated gift.

The fact that the trust does not specifically state that the income of Mr. Wanamaker's grandchildren is subject to spendthrift protection does not end the inquiry. In *Ball v. Weightman,* 273 Pa. 120, 116 A. 653 (1922), the Supreme Court of Pennsylvania construed a will which specifically imposed spendthrift protection upon the income payable to the testator's children and grandchildren but was silent with respect to great-grandchildren. The court held that the term "grandchildren" should be read to encompass great-grandchildren. The court reasoned that the will used the terms grandchildren, issue and descendants indiscriminately throughout the will, and exhibited no intent to discriminate among beneficiaries. Further, construing the provision to protect the interests of great-grandchildren comported with the testator's manifest purpose: "to secure the income of his estate for the personal use of his descendants during the life of the trust." *Id.* at 654.

In the present case, considering the will as a whole, this court concludes that plaintiff's reading is incorrect. Here, as in *Ball, supra* there appears to be no intent on the part of the testator to distinguish between beneficiaries with regard to spendthrift protection. Moreover, we find no principled reason to conclude that the phrase, "subject to the provisions herein contained" does not include the provision imposing spendthrift protection on the trust income.

Plaintiff contends that, in a separate trust created under the same will, Mr. Wanamaker specifically directed that spendthrift protection be afforded the interests of all the beneficiaries. According to plaintiff, Mr. Wanamaker knew how to make such a grant and specifically chose not to do so with regard to the trust at issue here. Plaintiff points to Paragraph Second which creates a trust consisting of life insurance proceeds. There, Mr. Wanamaker granted his children income "without power on their part to anticipate or assign the same, in any manner whatever, or be subject to any attachment, alienation or sequestration for their debts, contracts or engagements." He further provided that upon the death of a child, the child's income was to be paid to the child's issue, "in accordance with the same terms and conditions under which the parent, or parents enjoyed the same during their lifetime."

This court finds no significant difference between the phrases "in accordance with the same terms and conditions" and "subject to the provisions herein previously contained." Furthermore, plaintiff's close reading assumes a careful and competent scrivener accurately transcribing the testator's intent. Unfortunately, as the Pennsylvania Supreme Court noted when construing the will in question many years ago, errors and ambiguous language were "characteristic of the slovenly method of the scrivener ..." *In re Wanamaker's Estate*, 335 Pa. 241, 6 A.2d 852 (1939). Given the poor quality of the draftsmanship throughout the document, this court gives no weight to the scrivener's failure to use identical language with respect to each trust. The court finds that Rodman Wanamaker intended to provide spendthrift protection for his grandchildren and their descendants. We find that the spendthrift clause of his will governs defendant's income interest in the Wanamaker trust.

Plaintiff next contends that he may execute on defendant's trust income regardless of spendthrift protection because he performed services which benefitted defendant's interest as a beneficiary of the trust. Plaintiff relies for this proposition on § 157(c) of the Restatement (2d) of Trusts (1959). Section 157 provides:

Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,

(a) by the wife or child of the beneficiary for support, or by the wife for alimony;

(b) for necessary services rendered to the beneficiary or necessary supplies furnished to him;

(c) *for services rendered and materials furnished which preserve or benefit the interest of the beneficiary;*

(d) by the United States or a State to satisfy a claim against the beneficiary.

(emphasis added).

No Pennsylvania court has yet addressed the applicability of § 157(c). Consequently, this court must determine whether the Supreme Court of Pennsylvania would adopt that section of the Restatement (2d), and if so, whether it is applicable to the facts of the present case. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

In determining whether Pennsylvania would adopt § 157(c), we must review the rationale behind the proposed exception. The Comment to § 157(c) in the Restatement (2d) explains that the subsection is necessary to prevent unjust enrichment of the beneficiary. To the same effect is *Scott on Trusts*, which states:

The purpose of the settlor in imposing restrictions on the alienation of the beneficiary's interest is to prevent him from losing his interest by his own improvidence. There is no reason, however, why his interest under the trust should be exempt from the claims of those who have by their services conferred a benefit on his interest. He should not be permitted to profit at their expense.

IIA William F. Fratcher, *Scott on Trusts*, § 157.3, p. 208 (4th ed. 1987). Noted trust expert Erwin Griswold has stated that in addition to the desire to prevent unjust enrichment, the exception is necessary to ensure that beneficiaries have the means to protect their interests:

Without such a remedy, needy beneficiaries may be wholly unable to enforce their

interests or to obtain protection in case the trust is not properly administered. Griswold, *Spendthrift Trusts* § 346 at p. 410 (2d Ed.1947).

As stated above, no Pennsylvania case has construed § 157(c). In fact, this court has found only one case expressly adopting § 157(c). In *Evans & Luptak v. Obolensky,* 194 Mich.App. 708, 487 N.W.2d 521 (1992), plaintiff, a law firm, represented a beneficiary of a spendthrift trust in an attempt to secure the best offer for the capital stock of a business which was the primary asset of the trust. The firm was not, however, responsible for finding the ultimate buyer. Plaintiff filed suit for unpaid fees and received a judgment of $26,855.11. Plaintiff then requested the appointment of a receiver to collect the income that defendant would receive from the trust. The Michigan Court of Appeals adopted § 157(c) in order to prevent unjust enrichment of the beneficiary. The court did so based on the fact that Michigan appellate courts had previously adopted the other three subsections of § 157. The court remanded the case to the lower court, for a determination of whether the plaintiff firm actually conferred a benefit on the interest of the beneficiary.

Other courts considering the claims of attorneys who have performed services for the beneficiaries of spendthrift trusts have split on whether an attorney can attach the beneficiary's interest in the trust. In *Castree v. Shotwell,* 68 A. 774 (N.J.Eq.1908), the court held that an attorney hired by the beneficiary of a spendthrift trust to advise her about the management of the trust could not attach the income of the trust. It declared, "[t]he income is not property of which the beneficiary before the due day can have either the possession or control, nor of which she can be seized, nor of which she can make present disposition and delivery." *Id.* at 775. The income, therefore is not an estate which the court can incumber. *See also Keaton v. Stephenson,* 206 Okla. 32, 240 P.2d 1088 (1952).

Conversely, in *Williams v. Bischoff,* 187 N.Y. 286, 79 N.E. 1019 (1907), the court held that although defendant's income was protected by a spendthrift provision, an attorney could reach that income nonetheless where

he successfully instituted suit to recover improperly withheld funds. The court stated that the attorney acquired an attorney's lien on the funds for his services. The court explained that by recovering the funds, the attorney provided necessary services for the beneficiary. It also reasoned that an opposite holding would deprive beneficiaries of needed counsel.

The Pennsylvania courts are firmly committed to the enforcement of spendthrift provisions. "The recognition of a testator's right to protect his heirs from a presumed incapacity to manage inheritances is ... a definite policy of the common law. It can only be abrogated, if at all, by nothing less than express, definite, and positive enactment." *In re Harrison's Estate,* 322 Pa. 532, 185 A. 766, 767 (1936); *see also Sproul–Bolton v. Sproul–Bolton,* 383 Pa. 85, 117 A.2d 688, 690 (1955). Pennsylvania enforces spendthrift provisions solely to protect the property right of the donor in the execution of the trust and not out of any concern for the beneficiary:

> When a trust of this kind has been created, the law holds that the donor has an individual right of property in the execution of the trust; and to deprive him of it would be a fraud on his generosity. For the law to appropriate a gift to a person not intended would be an invasion of the donor's private dominion.

*In re Heyl's Estate,* 352 Pa. 407, 43 A.2d 130, 131 (1945); *In re Borsch's Estate,* 362 Pa. 581, 67 A.2d 119 (1949).

Plaintiff asserts that like Michigan, Pennsylvania has approved subsections (a), (b) and (d) of § 157 of the Restatement (2d) and would therefore be likely to adopt subsection (c). The underlying premise, however, is not entirely correct.

Subsection (a) which permits a spendthrift trust to be reached in satisfaction of claims for support or alimony, has been substantially, but not entirely, adopted by the Pennsylvania courts and codified by statute. In *In re Moorehead's Estate,* 289 Pa. 542, 137 A. 802 (1927), the wife of a beneficiary of a spendthrift trust petitioned the trustees to pay her support and maintenance out of trust

income. The Pennsylvania Supreme Court held that the deserted wife could reach her husband's income despite spendthrift provisions in the will protecting it from the claims of creditors. The court first concluded that despite the language of the spendthrift provision, the will as a whole evidenced an intention on the part of the testator to provide for both the beneficiary and his wife. The court also noted that the claim of a wife for support is not a "debt" and a wife is not a "creditor" in the usual sense. The obligation to support a spouse is not contractual and the husband and wife are considered a legal unity. Finally, the court concluded that to preclude the wife from reaching the trust assets would violate the vital interest of the Commonwealth in the maintenance of marriage. *Id.* at 806.

Similarly, The Pennsylvania Supreme Court, in *In re Stewart's Estate*, 334 Pa. 356, 5 A.2d 910 (1939), found that a non-resident deserted wife could reach spendthrift income to satisfy claims for support. As in *Moorehead's Estate*, the court found no intent on the part of the testator to deprive the wife of the necessities of life, and restated the position that spendthrift clauses were against public policy as to the claims of a spouse or minor child for support. That court also relied on § 19 of the Wills Act of June 7, 1917, 20 P.S. § 243 (repealed) which provided:

> All income whatsoever, devised or bequeathed by any will so as to be free from the liability for the debts, contracts or engagements of the beneficiary, or so as not to be subject to execution, attachment sur judgment, sequestration, or other process, shall, notwithstanding such testamentary provisions, be subject to and liable for the support and maintenance of the wife and minor children of the beneficiary . . .

However, in *Lippincott v. Lippincott*, 349 Pa. 501, 37 A.2d 741 (1944), the Pennsylvania Supreme Court held that neither the Wills Act nor the common law allowed an ex-wife to reach trust assets in satisfaction of out of state award of alimony.[4] The court reasoned

that after the marriage was terminated the Commonwealth did not have a sufficient policy interest to allow, "such an extraordinary and drastic remedy as seizure by execution of the income of a spendthrift trust, against the desire and intent of the creator of that trust." Thus, although it did not mention the Restatement (2d), the court implicitly declined to adopt, in its entirety, § 157(a) which expressly includes a claim for alimony.

The current applicable statutory provision provides:

> Income of a trust subject to spendthrift or similar provisions shall nevertheless be liable for the support of anyone whom the income beneficiary shall be under legal duty to support.

20 Pa.Cons.Stat.Ann. § 6112. Although this statute appears broad enough to encompass claims for alimony, we have found no Pennsylvania case which so states.

With regard to § 157(b) of the Restatement (2d), which concerns claims for necessities, plaintiffs point to *Lang v. Commonwealth Dept. of Public Welfare*, 515 Pa. 428, 528 A.2d 1335 (1987) to support the proposition that it has been adopted in Pennsylvania. There, the court stated in dicta, "[a] *support* trust though containing an implied spendthrift provision, can generally be reached to satisfy claims for necessary services rendered to the beneficiary. *See* Restatement (Second) of Trust, § 157 (1959)." (emphasis added). As plaintiff concedes, however, the Wanamaker trust is not a support trust. A support trust is one where the terms of the trust direct the trustee to pay to the beneficiary or to apply for his use, so much of the income or principal as is necessary for his support. *Scott*, §§ 154, 157.2. The support trust may be reached to satisfy claims for necessary services because the beneficiary could compel the distribution of funds to pay for necessary services. *See Lang, supra*, 1341–42.

To similar effect is *In re Walters*, 278 Pa. 421, 123 A. 408 (1924), relied on by plaintiffs. There, the court found that funds held in

---

4. Pennsylvania had no provision for alimony in an absolute divorce until the General Assembly enacted the Divorce Code of 1980. 23 P.S. § 104 [repealed]. *See now* 23 Pa.Cons.Stat.Ann. § 3103, added in 1990.

trust, the income of which was to be used at the discretion of the trustee for the "comfortable support and maintenance" of the beneficiary, could be reached in payment of sums expended by the Commonwealth for the maintenance of the beneficiary in a state hospital. The court stated, "[t]he trust, in the present instance, was intended to secure the comfort of the insane person; and the devotion of the income, or a part of the principal, to the satisfaction of obligations incurred on his behalf is the mere carrying out of the testatrix's directions." *Id.* at 409.

The *Lang* case illustrates the importance of correctly classifying the trust at issue. In *Lang,* the Department of Public Welfare decided that income and principal of a testamentary trust were available resources for the beneficiary, who was therefore ineligible for medical assistance payments. The trustee appealed the decision. The court held that the issue turned on the intent of the testator in creating the trust, specifically:

> whether testator created a duty in trustee, independent of any statutory duty, to provide for William's basic support. If so, William arguably could compel distributions from the trust for his basic support.

*Lang,* 528 A.2d at 1339. The court explained that the testator did not intend to create a true support trust, but allowed the trustee some discretion to consider funds from other sources in determining the amount of trust assets to apply towards the beneficiary's care. Consequently, the Department of Public Welfare could not consider the trust assets as available resources. Although it may be that the courts of the Commonwealth would permit the funds of a pure spendthrift trust to be reached for necessaries, neither the *Lang* case nor any other which this court has found stands for that proposition.

Finally, plaintiff relies on *Scott Estate,* 11 D. & C.2d 590 (Pa.Commw.Ct.1956), for the proposition that Pennsylvania has approved § 157(d), which allows spendthrift trust income to be reached in satisfaction of claims by Federal or State government. *Scott* involved the adjudication of an executor's account upon the termination of a trust. Prior to the termination, a writ of attachment was served upon the executors by the United States Treasury Department, attaching the interest of one of the beneficiaries for $448.80 for delinquent income tax. The court specifically stated that it "did not assume to decide the effectiveness of this attachment." However, relying on § 157 of the Restatement (2d) and case law from other states, it allowed the accountants to retain $448.80 pending the determination of the attachment.

■ Thus, as shown above, Pennsylvania has not adopted in toto § 157(a), (b) and (d) of the Restatement (2d). A recurring theme in these cases is the courts' extreme reluctance to frustrate the intent of the testator by permitting the invasion of spendthrift assets. A review of Pennsylvania's treatment of spendthrift trusts in other contexts suggests that the courts of the Commonwealth would not disregard the intent of the testator merely in order to prevent unjust enrichment of the beneficiary. We note that any time a beneficiary avoids payment for goods or services based on the spendthrift protection imposed on his income, he is unjustly enriched. Moreover, Pennsylvania considers the invasion of spendthrift assets to be an "extraordinary remedy" to be employed only where truly vital interests are at stake. *Lippincott v. Lippincott,* 349 Pa. 501, 37 A.2d 741 (1944). Certainly the fact that the weight of equity may fall on the side of the party seeking such a remedy is not alone sufficient.

*In re Heyl's Estate,* 352 Pa. 407, 43 A.2d 130 (1945), is illustrative of Pennsylvania's reluctance to rely on equitable considerations in piercing a spendthrift trust. In that case, the testator established life interests in a trust subject to a spendthrift provision for the benefit of his two daughters. One daughter persuaded the trustee to use funds from the corpus of the trust to build her a house. She agreed in writing with the trustee that as long as she lived in the house, the trustees should charge her share of the trust income for the interest, taxes, insurance and repairs on the property. She further agreed that if she vacated the house, her share of the income from the trust could be charged with any deficiency between the rent received and the expenses. Eventually she moved out of the house and revoked her agreement with the trustee. The burden of

maintaining the house therefore shifted back to the corpus of the trust and adversely impacted her sister's interest in the trust.

The court stated that it could not consider "the moral issue of fair dealing" and was required to limit the inquiry to whether the beneficiary was within her rights to revoke. The court held that the original agreement was an assignment of the beneficiary's future interest in violation of the spendthrift limitation, and was therefore, "illegal, void and unenforceable ab initio." *Id.* at 131. The fact that the co-beneficiary's interest in the trust was reduced because of the revocation could not justify a violation of the terms of the spendthrift provision. *Id.*

It is possible that under certain circumstances it may comport with the testator's intent to compel payment from spendthrift assets. Such might be the case where the beneficiary was in danger of losing his interest in the trust or if funds were being wrongfully withheld. One might assume that the testator would not have intended that restrictions placed on the trust for the protection of the beneficiary's income actually prevent the beneficiary from protecting his right to receive that income. *See Williams v. Bischoff,* 187 N.Y. 286, 79 N.E. 1019 (1907). In such a case, Pennsylvania might permit the invasion of assets. However, we need not decide that question here.[5]

In this case, Schreiber seeks compensation for his work in connection with the sale of JWP and the surcharge action. However, as stated above, Schreiber discharged Kellogg from all liability for payment of fees in connection with the sale. Furthermore, the May 13, 1981 agreement which forms the basis for his claim here, obligates Kellogg only for the surcharge action and the referral fee.[6] Consequently, we need not consider any benefit which Schreiber may have conferred on Kel-

logg's interest in the trust as a result of work performed in connection with the sale of JWP.

With respect to Schreiber's compensation for the surcharge action, we first seek to determine the intent of Rodman Wanamaker, as set forth in his will. Article Third of the will states in pertinent part:

> I want my Trustees to be absolutely free and clear form all harassment, of all kinds, and this decision on my part shall be a complete and final answer to any demand which may be made upon them for the payment of money at any time whether made upon request, or by attempted suit.

Similarly, Article Thirteenth of the will states:

> It is my wish, and I so direct, said Trustees shall not be obliged to enter security, or bond, for the faithful discharge of their duties, nor shall they be obliged, at any time, to make any public accounting, or give out statements of accounts, or figures from the books, or records, of any of the Corporations. Any one [sic] interested therein, as a beneficiary, can personally obtain any information said Trustees, their survivors, are willing to give, but such information shall not be obtained, at any time, through counsel of any of the parties, or under Letters of Attorney-in-Fact, representing any one or by litigation. It is my wish full information shall be given of the business, in its details, at all reasonable times, to all parties in interest, in person, but not otherwise.

Judge Alfred Taxis, who presided over the surcharge litigation in the Orphans' Court of Montgomery County, had the opportunity to interpret these provisions. The trustees filed an answer to the surcharge petition listing the above provisions of the will as a

---

5. Our resolution of this case also makes it unnecessary for the court to consider whether if Pennsylvania were to adopt § 157(c) it would apply retroactively to testamentary trusts established prior to the publication of the Restatement of Trusts in 1935. Subsections (a), (b) and (c) of § 157 of the Restatement Trusts (1935) are identical to those in § 157 of the Restatement (2d) Trusts adopted in 1959.

6. At the hearing before this court, Schreiber argued that the referral fee referenced in the May 13, 1981 agreement was meant to be compensation for his work in connection with the sale of JWP. Consequently, he contends that he may attach the trust income as compensation for work performed in connection with the sale. However, because Schreiber discharged Kellogg from any liability for payment of the fees in connection with the sale of JWP, we need not determine the exact nature of the referral fee.

defense to the action. Specifically, the trustees alleged that the will precluded a beneficiary from asserting a claim against the trustees based upon alleged mismanagement of JWP or based on an alleged failure to furnish information to the beneficiaries. Kellogg then filed preliminary objections to the answer, contending that the provisions were contrary to public policy. Judge Taxis determined that the testator's manifest intent was to protect the trustees from any interference from the cestui que trust in the running of the business:

> [H]e [Rodman Wanamaker] made perfectly clear and left no doubt as to the matter, and that was that the trustees were to suffer no interference whatever by the cestui que trustent by the injection of the latter's opinion or suggestions as to how the business should be conducted or as to anything relative to the business, much less that the trustees should be challenged or annoyed by any litigation thereto.

*Wanamaker Estate,* 105 Montg. Co. L.R. 372, 378–79 (1979) (citations omitted).

As stated above, the terms of the settlement obligated the trustees to hold regular meetings and make certain information available to all beneficiaries, but did not require the payment of money into the trust or result in the discharge of any trustee. At the hearing before this court, Schreiber and his expert witness confirmed that this settlement agreement ran contrary to provisions of the will.

We cite the above provisions of Rodman Wanamaker's will as evidence that allowing Schreiber to attach Kellogg's spendthrift income would not comport with the testator's intent in this instance. While the equities seem to be in favor of Schreiber, we cannot ignore the testator's intent. Given Mr. Wanamaker's expressed desire to insulate the trustees from interference and Pennsylvania's extreme reluctance to allow the attachment of spendthrift income, we conclude that in this instance the Pennsylvania Supreme Court would not allow the invasion of Kellogg's spendthrift income to satisfy the judgment in this action. Pennsylvania, we believe, would not apply § 157(c) of the Restatement (2d) to negate the wishes of Rodman Wanamaker under the circumstances of this case. We note that this conclusion does not in any way undermine the validity of the underlying judgment in this case. We hold only that Schreiber may not attach Kellogg's protected income in satisfaction of that judgment.

Accordingly, the court will deny the motion of plaintiff Palmer Schreiber to execute on defendant Christopher Kellogg's income from the Wanamaker trust.