

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-17-1995

# Schreiber v Kellogg

Precedential or Non-Precedential:

Docket 94-1551

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Schreiber v Kellogg" (1995). *1995 Decisions*. Paper 78.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/78

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-1551
_____


PALMER K. SCHREIBER,
                    Appellant

                v.

CHRISTOPHER G. KELLOGG


_____


On Appeal from the United States District Court
   for the Eastern District of Pennsylvania
      (D.C. Civil Action No. 90-cv-05806)
           _____


Argued October 31, 1994

Before:  SCIRICA, LEWIS and RONEY*, <u>Circuit</u> <u>Judges</u>

(Filed March 17, l995)


               GREGORY G. ALEXANDER, ESQUIRE (ARGUED)
               Alexander & Pelli
               One Penn Center, Suite 1110
               Philadelphia, Pennsylvania 19103

               STANLEY R. WOLFE, ESQUIRE
               STUART J. GUBER, ESQUIRE
               Berger & Montague
               1622 Locust Street
               Philadelphia, Pennsylvania 19103

                  Attorneys for Appellant

*The Honorable Paul H. Roney, United States Circuit Judge for the Eleventh Judicial Circuit, sitting by designation.

GAVIN P. LENTZ, ESQUIRE (ARGUED)
Bochetto & Lentz
1500 Market Street
East Tower, Centre Square, 14th Floor
Philadelphia, Pennsylvania 19102

     Attorney for Appellee,
     Christopher G. Kellogg


JOHN E. CARUSO, ESQUIRE (ARGUED)
Montgomery, McCracken, Walker & Rhoads
Three Parkway, 20th Floor
Philadelphia, Pennsylvania 19102

     Attorney for Appellee,
     Trustees of the Stock Trust
     Under Item Third of the Will
     of Rodman Wanamaker, Deceased

———————————————

OPINION OF THE COURT

———————————————


SCIRICA, <u>Circuit</u> <u>Judge</u>.


       This diversity case requires us to interpret the scope of a purported spendthrift provision in a trust created in the early part of the century. In so doing, we face an issue of first impression under the laws of Pennsylvania and most other states: the applicability of section 157(c) of the Restatement (Second) of Trusts, which allows creditors to reach a spendthrift trust interest in limited circumstances. The district court found the trust contained a spendthrift provision protecting the interest of the beneficiary and that Pennsylvania courts would not apply the Restatement exception under the circumstances of

this case.  Schreiber v. Kellogg, 849 F. Supp. 382, 389, 394

(E.D. Pa. 1994).  We will affirm in part and reverse in part.

I.

In 1928, Rodman Wanamaker died, leaving a will and

codicils[1] that established trusts for his children and their

descendants.  At issue in this case is a $120 million trust

created in Paragraph Third of his will.

For half a century, the trust consisted of the stock in

the John Wanamaker department store.  In March 1978, Carter,

Hawley, Hale, Inc. offered the trust $40 million for the

Wanamaker stock.  Christopher G. Kellogg, one of Wanamaker's

great-grandchildren and a contingent income beneficiary of the

trust,[2] engaged attorney Palmer K. Schreiber to increase the

_____

[1].  The Wanamaker will and its codicils have provided much
material for judicial opinion, including at least three decisions
by the Pennsylvania Supreme Court and a number by the Montgomery
County Orphans' Court.  See, e.g., In re Estate of Wanamaker, 159
A.2d 201 (Pa. 1960); In re Wanamaker's Estate, 6 A.2d 852 (Pa.
1939); In re Wanamaker's Estate, 167 A. 592 (Pa. 1933); In re
Wanamaker Estate, 105 Montgomery County L. Rep. 372 (Montgomery
County Orphans' Ct. 1979); In re Wanamaker Estate, No. 38,456
(Montgomery County Orphans' Ct. Feb. 27, 1975).

[2].  Although the will did not expressly provide that Wanamaker's
great-grandchildren would succeed to their parents' interests in
the trust, Judge Alfred L. Taxis, Jr., of the Montgomery County
Orphans' Court ruled two decades ago that the failure to include
such specific language was an oversight of the drafter.  In re
Wanamaker Estate, No. 38,456 (Montgomery County Orphans' Ct. Feb.
27, 1975).  Thus, Kellogg became a contingent beneficiary as a
result of this 1975 decision; he became an income beneficiary
upon the death of his mother in August 1989.  Cf. Schreiber v.
Kellogg, 849 F. Supp. 382, 384 nn.1-2 (E.D. Pa. 1994) (decision
on execution of judgment).  He receives $31,500 per month in
income from the trust.  Schreiber v. Kellogg, 839 F. Supp. 1157,
1160 (E.D. Pa. 1993) (decision on motion to stay judgment).

purchase price of the stock. Partially as a result of those efforts, the stock was sold for $60 million, about $20 million more than the original offer. For his services, the Montgomery County Orphans' Court awarded Schreiber $117,000 in counsel fees and interest from the corpus of the trust, and he later received a judgment of nearly $88,000, plus counsel fees and interest, against another attorney involved in the stock sale for breach of a fee-sharing agreement.

In October 1978, after the stock was sold, Schreiber filed a surcharge action on behalf of Kellogg against the trustees of the Wanamaker trust, alleging negligence, mismanagement, and breach of fiduciary duty. In May 1981, the parties settled the suit. The trustees agreed to hold regular meetings, make certain information available to beneficiaries, and file a plan for the creation of a retirement age for trustees. For his part, Kellogg agreed to pay his own counsel fees and to obtain a release of any claims against the trust from his counsel. Schreiber and Kellogg then signed a fee agreement that provided for Kellogg to pay Schreiber $80,000, plus interest at a "commercially competitive" rate.

When Kellogg failed to pay the amount due, Schreiber filed this suit for breach of contract. The district court awarded him $512,864 for counsel fees and interest, and we affirmed. Schreiber v. Kellogg, 37 F.3d 1488 (3d Cir. 1994).

During the pendency of the appeal, Schreiber asked the district court to execute on Kellogg's interest in the trust to satisfy the judgment. The court denied the motion, holding that

Wanamaker had intended to provide spendthrift protection for his great-grandchildren and Kellogg's interest in the trust was protected.  Schreiber v. Kellogg, 849 F. Supp. 382, 389 (E.D. Pa. 1994).  The court also ruled that Pennsylvania courts would not apply, under the circumstances of this case, section 157(c) of the Restatement (Second) of Trusts (1959), which permits judgment creditors that preserve or benefit an interest in a spendthrift trust to reach that interest to enforce valid claims.  Id. at 394.  Schreiber appealed.

The district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332 (1988).  We have jurisdiction under 28 U.S.C. § 1291 (1988).  Our review of the district court's construction of Pennsylvania law is de novo.  Salve Regina College v. Russell, 499 U.S. 225, 231 (1991) ("We conclude that a court of appeals should review de novo a district court's determination of state law.");  Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1557 (3d Cir.) ("The determinations regarding state law, where appropriate, will be reviewed de novo."), cert. denied, 115 S. Ct. 480 (1994).  Our standard of review of the district court's interpretation of the Wanamaker will depends on whether Pennsylvania law treats such an interpretation as a question of law or of fact.[3]

_____

[3]. Because this is a diversity case, we look to state law to determine whether a trial court's interpretation of a will is a question of law subject to de novo review or one of fact under a clearly erroneous standard.  See United States v. Tabor Court Realty Corp., 803 F.2d 1288, 1304 (3d Cir. 1986) (citation omitted) ("In Pennsylvania, the existence of actual intent [for a fraud action] is a question of fact; therefore, the court's determination is reviewed on the clearly erroneous standard."),

Under Pennsylvania law, interpretation of a will generally is a question of law, as long as the court determines the meaning of the document solely from its language and not from any surrounding circumstances.  Cf. In re Estate of Livingston, 612 A.2d 976, 981 n.2 (Pa. 1992) ("In this case, the courts were called upon to interpret the legal effect of a writing.  This entails reaching a conclusion of law."); Miller v. Bower, 103 A. 727, 728 (Pa. 1918) ("[T]he question dividing the parties was resolved into a pure question of law arising out of the construction of the will . . . .").  Because the district court here apparently did not consider any evidence beyond the four corners of the will,[4] our review is a question of Pennsylvania law subject to de novo review.

(..continued)
cert. denied, 483 U.S. 1005 (1987); De Oliveira v. United States, 767 F.2d 1344, 1347 (9th Cir. 1985) (citations omitted) ("Because the testator lived in California, California law governs the construction of his will.  Under California law, the construction of a will is a question of law unless the construction turns on the credibility of extrinsic evidence.").

[4].  Although the district court noted that it had conducted an evidentiary hearing on the motion to execute on the trust interest, Schreiber, 849 F. Supp. at 384, the parties agree that the "primary purpose" of the hearing involved the applicability of section 157(c) of the Restatement (Second) of Trusts (1959) -- not interpretation of the will itself.  The trustees of the Wanamaker trust contend that the district court also received evidence relating to Wanamaker's intent at that hearing, but they failed to point out any evidence or testimony on intent.  The only evidence allegedly heard consisted of testimony and an affidavit noting that no one had ever before questioned the applicability of the spendthrift provision to Wanamaker's great-grandchildren, but this evidence does not bear directly on the question of Wanamaker's intent.  Furthermore, the district court does not cite any factor other than the language of the will and case law to support its holding on the issue of Wanamaker's intent.

II.

Under Rule 69(a) of the Federal Rules of Civil Procedure, a federal court must follow relevant state law in a proceeding to execute on a judgment, unless a federal statute dictates otherwise. See United States v. Yazell, 382 U.S. 341, 354-58 (1966). Because no applicable federal statute exists here, we look to Pennsylvania law to determine whether Schreiber may execute on Kellogg's interest in the Wanamaker trust.

A.

In general, "[t]rusts in which the interest of a beneficiary cannot be assigned by him or reached by his creditors have come to be known as 'spendthrift trusts.'" 2A Austin W. Scott & William F. Fratcher, The Law of Trusts § 151, at 83 (4th ed. 1987).[5] No specific wording is required under Pennsylvania law to create a spendthrift trust.[6] If a spendthrift trust is

---

[5]. Spendthrift trusts originated as a means to provide for people known as "spendthrifts," such as "infants, mental incompetents, [and] married women." See Case Comment, Spendthrift Trusts -- The Public Policy Exception, 45 Mo. L. Rev. 369, 372 (1980). The beneficiary of a spendthrift trust, however, need not be a spendthrift. See id. ("[I]t is no longer necessary that the beneficiary be a spendthrift."); Restatement (Second) of Trusts § 152 cmt. g ("A spendthrift trust may be created in favor of a beneficiary although he is competent to manage his own affairs."); 2A Austin W. Scott & William F. Fratcher, The Law of Trusts § 151, at 83 (4th ed. 1987) ("[I]t is quite immaterial whether or not the beneficiary is in fact a spendthrift.").

[6]. See Riverside Trust Co. v. Twitchell, 20 A.2d 768, 770 (Pa. 1941) ("The intent to create a spendthrift trust is not to be set aside merely because it is not clearly expressed by the scrivener."); J. Brooke Aker, Pennsylvania Estate Planning and Drafting § 113.3, at 3 (1978) (noting that "no particular words are required" to create a spendthrift trust). But see In re Benson, 615 A.2d 792, 795 (Pa. Super. Ct. 1992) (stating that

created, courts will sustain its validity,[7] except in a few limited circumstances.[8]

Because the purported spendthrift trust here was created in a will, we must consider the intent of the testator, which under Pennsylvania law controls interpretation of a will's provisions. In construing the same will at issue here, the Pennsylvania Supreme Court explained:

> The intention of the testator is the pole star in the interpretation of every will and that intention must be ascertained from a consideration of the entire will, including its scheme of distribution, as well as its language, together with all the surrounding and attendant circumstances.

In re Estate of Wanamaker, 159 A.2d 201, 204 (Pa. 1960) (citations omitted); see also In re Estate of Patrick, 409 A.2d 388, 390 (Pa. 1979) ("[I]n construing a will, the intent of the testator, if it can be ascertained, must prevail.").

Similarly, the intent of the creator of a trust controls the interpretation of the trust document. See In re Benson, 615 A.2d 792, 794-95 (Pa. Super. Ct. 1992) ("The polestar

(..continued)
courts cannot "rewrite" or "distort" the language of a document creating a trust "in order to attain what is believed to be beneficial or wise or even what it is believed that the settlor would or should have provided if he possessed a knowledge of all presently existing circumstances").

[7]. See, e.g., In re Benson, 615 A.2d at 794 ("[W]here a spendthrift trust is in issue, the courts will uphold the spendthrift provisions as a means to enforce the settlor's right to dispose of his property as he chooses . . . .").

[8]. For a discussion of exceptions to the spendthrift trust rule, see infra part III.

in every trust is the settlor's intent and that intent must prevail").  Pennsylvania courts agree the writing establishing a trust "'must be considered to be the best and controlling evidence of the settlor's intent.'"  Id. at 795 (quoting In re Girard Trust Corn Exch. Bank, 208 A.2d 857, 859 (Pa. 1965)).  Because the trust here was created in the Wanamaker will, we look to the language of that will to determine the validity of the purported spendthrift provision.

B.

The relevant provisions of the will are Paragraphs Third and Eighth.  Paragraph Third[9] established the stock trust

---

[9].  Although Paragraph Third continued for six pages, the most relevant part for our discussion appeared primarily on the first page.  It provided:

> I own all the shares of the Capital Stock of John Wanamaker Philadelphia.  I order and direct they shall be held, In Trust, . . . for the following uses and purposes, to wit:
>
> To receive all dividends, income or money derived therefrom, as same shall be declared and made payable by the Corporation of John Wanamaker Philadelphia, it being my wish, and direction, a Sinking Fund shall be created into which there shall be annually paid, from the net profits of John Wanamaker Philadelphia, . . . an amount equal to not less than fifty (50) per cent. of the annual profits, to be used in payment, and liquidation, on account of any indebtedness due by the above Corporation . . . and the difference between the amount of said net annual profits, and the amount paid into said Sinking Fund, shall then annually be divided equally between my three (3) children, Fernanda W. Heeren, John Wanamaker, Jr., Marie Louise Munn, during their life, for

and divided certain proceeds between Wanamaker's children "for
their sole and separate use, not to be anticipated, or assigned
by them, in any manner whatever, nor subject to any attachment,
alienation or sequestration for their debts, contracts or
engagements."  There is no dispute that this language established
a spendthrift trust protecting Wanamaker's children.

(..continued)
        their sole and separate use, not to be
        anticipated, or assigned by them, in any
        matter whatever, nor subject to any
        attachment, alienation or sequestration for
        their debts, contracts or engagements.

Paragraph Eighth[10] stipulated that the trust established in Paragraph Third also shall provide for descendants of the Wanamaker children "subject to the provisions herein previously contained."  The fundamental disagreement in this case is whether this language extends the spendthrift protection from Paragraph Third to cover the bequest to Wanamaker's grandchildren and great-grandchildren in Paragraph Eighth.  The district court held that it did, thereby providing spendthrift protection to Kellogg's interest.  Schreiber, 849 F. Supp. at 388-89.  But Schreiber contends the phrase merely means that a gift made in a

---

[10].  Paragraph Eighth provided:

> In further Trust, on the part of my said Trustees, to hold said Capital Stock, and all dividends, income or money derived therefrom, subject to the provisions herein previously contained, for the benefit of all the child, or children, of all the children of my three (3) children, for and during the term of their natural life, or lives, of such of my said grandchildren, and for the period of twenty-one (21) years after the date of the decease of the last surviving grandchild.  In further Trust, at the expiration of the period of twenty-one (21) years, after the date of the decease of the last surviving grandchild, of my children, then said stock, or the proceeds which may be derived therefrom, to be equally divided, share and share alike, into as many parts as there may then be great-grandchildren of mine, surviving, and the descendant of any great-grandchild, then surviving, the latter to receive and enjoy, subject to the provisions heretofore stated such share as their parent, or parents, would have enjoyed, had they then not been deceased.

(emphasis added).

preceding paragraph takes precedence over a gift stated later in the will.

To resolve this dispute, we must look to the language and structure of the entire will.  See, e.g., Riverside Trust Co. v. Twitchell, 20 A.2d 768, 770 (Pa. 1941); Ball v. Weightman, 116 A. 653, 654 (Pa. 1922).  After the first two paragraphs made unrelated bequests, Paragraph Third created the stock trust and divided the proceeds into three general categories.  First, between one-half and two-thirds of the income from the trust was to pay outstanding debts of the John Wanamaker corporate entities.  Second, the remainder of the stock income was to be shared by Rodman Wanamaker's three children, subject to the spendthrift provisions noted earlier.  Upon the death of the Wanamaker children, their children were to split one-half of their parent's share.  Third, the other half share would be accumulated to fund various charities.

Paragraph Seventh noted that if, under Paragraph Third, the first category of money was not needed to pay Wanamaker corporate debts, then the entire income of the trust should be divided among the Wanamaker children.  "[B]ut the provisions as to the amount which shall go to my children's children, in the event of the decease of the former, shall remain as provided for in the paragraph heretofore."  The final relevant section, Paragraph Eighth, directed the trust income to the Wanamaker children's descendants "subject to the provisions herein previously contained."

Although Schreiber contends the limiting phrase in Paragraph Eighth merely prioritizes among gifts made in the will, we believe it means something more.  Paragraph Third created a detailed scheme of distribution to different categories of beneficiaries subject to certain conditions and restrictions, and the paragraphs following made bequests according to that scheme.  We believe the restrictive phrase in Paragraph Eighth was meant to subject the bequests made therein to all applicable provisions of the previous paragraphs; the phrase was meant to state that the descendants of Rodman Wanamaker would receive the trust income under the scheme as established in Paragraph Third and followed in the other relevant paragraphs.  That scheme included a spendthrift provision for the individual beneficiaries.  We see no reason why that provision should not be among those to which the bequests in Paragraph Eighth were explicitly made "subject."

Other provisions of the will support this interpretation.  For example, Paragraph Fifth mandated the creation of an artisans school and adopted "[t]he same method of creating a principal sum" as used to fund a children's home established in Paragraph Third.  Paragraph Sixth provided for a sanitarium with funding "[a]s provided under the last paragraph, and fully set forth in the third paragraph."  Thus, it appears Rodman Wanamaker created a detailed funding mechanism from stock income in Paragraph Third of his will and envisioned that bequests made in the paragraphs following would conform to the rules applicable to that category of income.

Pennsylvania case law also supports this result.  In Ball v. Weightman, 116 A. 653 (Pa. 1922), the Pennsylvania Supreme Court upheld spendthrift protection for a testator's great-grandchildren, even though the will specifically included such protection only for the testator's grandchildren. Repeatedly noting that it examined the "entire will" for an indication of the testator's intent, the court stated it saw:

> nothing to indicate an intent to discriminate between beneficiaries, or to require the trustees to distribute the income direct to some, and not so to others.  Testator's manifest purpose was to secure the income of his estate for the personal use of his descendants during the life of the trust, and such protection is no more essential to a child or grandchild than to a great-grandchild . . . .

Id. at 654.[11]  Similarly, the Supreme Court in Riverside Trust Co. v. Twitchell, 20 A.2d 768 (Pa. 1941), decided that a deed of trust explicitly granting spendthrift protection over the principal of the trust, but not to the income, was meant to cover both.

> Plaintiff argues that the expression contained in the trust agreement . . . signifies an intent to protect merely the principal.  Yet when the instrument is examined as a whole, it readily appears that

---

[11].  It is true that Ball partially relied on the fact that "throughout the will, testator seems to use the words 'grandchildren,' 'issue,' and 'descendants' indiscriminately, when referring to those who might become lineal descendants of his children."  116 A. at 654.  We acknowledge that this is not the situation with the Wanamaker will.  But the Pennsylvania Supreme Court in Ball also relied on its examination of the entire will and the lack of any indication that the testator intended to discriminate between beneficiaries, id., a form of analysis that proves useful in this case.

the grantor definitely intended an equal protection of the income.  The intent to create a spendthrift trust is not to be set aside merely because it is not clearly expressed by the scrivener.[12]

Id. at 770.  From these cases, it appears the Pennsylvania Supreme Court broadly construes spendthrift provisions when the testator has indicated a desire to incorporate such protection into a trust, but has failed to clearly define the scope of coverage.

Nevertheless, Schreiber notes that a separate trust created in the Wanamaker will explicitly made spendthrift protection applicable to the interests of all beneficiaries, the

---

[12].  In fact, the Pennsylvania Supreme Court has interpreted a trust created in a will to have spendthrift protection even when the will contained no such express language:

> Is this a spendthrift trust?  It may be admitted that it lacks some of the usual provisions of such a paper, notably the absence of any clause protecting the income from attachment, etc.  If, however, we can gather from the will itself, and from the light of the circumstances surrounding the testator at the time he made it, that his intent was to create a spendthrift trust, such intent ought not to be defeated because his conveyancer blundered.

Appeal of Grothe, 19 A. 1058, 1059 (Pa. 1890); see also Aker, supra, § 113.3, at 3 (noting that "no particular words are required" to create a spendthrift trust and that "a spendthrift clause may be implied"); 6 The Hon. David G. Hunter et al., Pennsylvania Orphans' Court Commonplace Book § 6(b), at 48 (2d ed. 1959) (citing numerous cases) ("Where such appears in the will to be the manifest intention of the testator, a spendthrift trust will be sustained, although the testator has not provided in terms that the estate of the beneficiary shall not be liable for his debts.").

Wanamaker children and their descendants alike.  Paragraph Second created a trust from life insurance proceeds and directed the money be dispersed to Wanamaker's children "without power on their part to anticipate or assign the same, in any manner whatever, or be subject to any attachment, alienation or sequestration for their debts, contracts or engagements."  It further provided that, upon a child's death, the child's income be paid to the child's issue "in accordance with the same terms and conditions under which the parent, or parents enjoyed the same during their lifetime."  Thus, Schreiber contends Wanamaker knew how to make spendthrift protection applicable to all beneficiaries, his children and their descendants alike, but he chose not to do so with the beneficiaries of the Paragraph Third stock trust.

We agree with the district court that, in the context of this will, there is no meaningful difference between the phrases "in accordance with the same terms and conditions" and "subject to the provisions herein previously contained."  The different terminology instead appears merely to be a result of the structure of the will.  In just over one page, Paragraph Second established a relatively simple insurance trust, designated the Wanamaker children as beneficiaries protected by a spendthrift provision, and provided that the children's descendants would benefit "in accordance with the same terms and conditions under which the parent, or parents enjoyed the same during their lifetime."  By contrast, Paragraph Third established the stock trust, created categories of funding, and made bequests

to the Wanamaker children subject to the spendthrift clause.
Eight pages later, after further elaboration on the stock trust
and its beneficiaries, Paragraph Eighth then named the Wanamaker
children's descendants as beneficiaries "subject to the
provisions herein previously contained."  Thus, Paragraph Eighth
made the Wanamaker children's descendants subject to the entire
scheme of distribution created for the stock trust -- not just a
few limiting provisos as under the Paragraph Second insurance
trust.[13]

---

[13]. The language of Paragraph Second supports the proposition
that Wanamaker intended spendthrift protection to cover his
great-grandchildren under the Paragraph Third stock trust.  In In
re Wanamaker Estate, No. 38,456 (Montgomery County Orphans' Ct.
Feb. 27, 1975), which interpreted this same trust, the issue was
whether Wanamaker's great-grandchildren succeeded to their
parents' income interests in the Paragraph Third stock trust.
Although Paragraphs Third and Eighth did not resolve the issue,
Paragraph Twenty-Second of the will addressed similar
distribution rights under a residuary trust.  Based largely upon
the wording of this other trust, Judge Taxis concluded that
Wanamaker's great-grandchildren were beneficiaries of the
Paragraph Third stock trust:

> [T]he language [of the Paragraph Twenty-
> Second trust] clearly evidences a general per
> stirpital plan of distribution by the
> testator.  Almost certainly the testator's
> intention concerning "Stock Trust" income
> would have been equally explicit but the
> scrivener failed to provide for the gap in
> time from the death of a grandchild until
> termination of the trust.  There is no
> indication anywhere in the will that the
> testator intended to establish a pattern of
> income distribution in the "Stock Trust"
> distinct from that of the Residuary Trust.

Id., slip op. at 5-6.  Similarly, there is no indication in the
will that Wanamaker intended to establish a level of spendthrift
protection for the stock trust distinct from that created for the
Paragraph Second insurance trust.

Furthermore, we are reluctant to impose artificial distinctions between these similar phrases in a will that has been criticized repeatedly for its careless drafting. See, e.g., In re Estate of Wanamaker, 159 A.2d 201, 203 (Pa. 1960) ("A number of provisions of Mr. Wanamaker's will (a) were ambiguous, and others (b) would have violated the Rule against Perpetuities . . . ."); In re Wanamaker's Estate, 6 A.2d 852, 854 (Pa. 1939) (noting the wording of Paragraph Eighth of the will was "characteristic of the slovenly method of the scrivener" and referring to "confused language used by the testator").

Therefore, given the language and structure of the will, the acknowledged imprecision in its terminology, and the broadness with which Pennsylvania courts have treated spendthrift provisions, we agree with the district court and hold that the spendthrift provision here encompasses Kellogg's interest in the trust.

III.

Because a spendthrift provision is involved, we must decide whether Pennsylvania would adopt section 157(c) of the Restatement (Second) of Trusts, which permits creditors to reach spendthrift trust interests to satisfy claims for services or materials that preserved or benefitted the beneficiary's interest in the trust. No Pennsylvania court has resolved this question. Indeed, neither the parties nor this court could locate more than one reported decision from any jurisdiction addressing this issue. Accordingly, we must determine whether the Pennsylvania Supreme Court would adopt section 157(c) and, if so, whether it

is applicable under the facts of this case.  See Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967); Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991).

A.

Section 157 of the Restatement (Second) of Trusts provides:

> Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,
>
> (a) by the wife or child of the beneficiary for support, or by the wife for alimony;
>
> (b) for necessary services rendered to the beneficiary or necessary supplies furnished to him;
>
> (c) for services rendered and materials furnished which preserve or benefit the interest of the beneficiary;
>
> (d) by the United States or a State to satisfy a claim against the beneficiary.

(emphasis added).

Section 157(c) has two fundamental purposes.  First, it was intended to prevent unjust enrichment of a beneficiary,[14] and

---

[14]. Restatement (Second) of Trusts § 157(c) cmt. d ("In such a case the beneficiary would be unjustly enriched if such a claim were not allowed"); Scott & Fratcher, supra, § 157.3, at 208 ("The purpose of the settlor in imposing restrictions on the alienation of the beneficiary's interest is to prevent him from losing his interest by his own improvidence.  There is no reason, however, why his interest under the trust should be exempt from the claims of those who have by their services conferred a benefit on his interest.  He should not be permitted to profit at their expense.").

second, to ensure that beneficiaries were able to obtain

necessary resources to protect their interests.[15]

## B.

As the state credited with first recognizing the

validity of spendthrift trusts,[16] Pennsylvania has more than 150

---

[15]. See Erwin N. Griswold, Spendthrift Trusts § 346, at 410 (2d ed. 1947) ("Without such a remedy, needy beneficiaries may be wholly unable to enforce their interests or to obtain protection in case the trust is not properly administered."); see also Anne S. Emanuel, Spendthrift Trusts: It's Time to Codify the Compromise, 72 Neb. L. Rev. 179, 196 (1993) (Section 157(c) "assures that the beneficiary's interest in the trust will not be diminished or lost because the person in a position to protect it declines to do so for fear her efforts would be uncompensated.").

[16]. See, e.g., John L. Bigelow, Support Claims of the Wife and the Spendthrift Trust Interest of the Husband–Beneficiary, 51 Dick. L. Rev. 1, 3 (1946) ("the doctrine of the spendthrift trust is said to have originated" in Pennsylvania); Griswold, supra, § 26, at 22 (footnote omitted) ("These early Pennsylvania cases not only were the foundation of spendthrift trusts in that state, but they were also frequently cited and relied on in other jurisdictions.  They formed the principal basis of the dictum in Nichols v. Eaton [91 U.S. 716 (1875)] which was the greatest single factor in the establishment of spendthrift trusts in the United States."); Wills – Spendthrift Clause – Legacies – Assignment, Fiduciary Rev., June 1941, at 1 ("Pennsylvania was the first jurisdiction to recognize spendthrift trusts."). Griswold explained that the development of spendthrift trusts occurred in Pennsylvania because the state had no equity courts and the law courts had no equity powers:

> The result was that if a man had what elsewhere would have been regarded as an equitable right, there was little or no means of dealing with it in Pennsylvania. Creditors were therefore unable to reach the interest of a beneficiary, since there was no procedure at law for that purpose. . . . When, in later years, the Pennsylvania courts gradually acquired equity powers, spendthrift trusts had become firmly established, and an accepted part of the law.

Griswold, supra, § 26, at 21–22.

years' worth of jurisprudence on the issue.[17]  Originally, "spendthrift trusts were upheld in their entirety by Pennsylvania courts on the theory that property rights include the right to place any type of restriction on . . . disposition."  Wills – Spendthrift Clause – Legacies – Assignment, Fiduciary Rev., June 1941, at 1.   Yet, as time passed, Pennsylvania courts began recognizing exceptions to the spendthrift trust rule, see id. at 1–4, even when that meant overruling prior case law.  See, e.g., John L. Bigelow, Support Claims of the Wife and the Spendthrift Trust Interest of the Husband–Beneficiary, 51 Dick. L. Rev. 1, 2 (1946) (noting Pennsylvania courts' "change of position from one extreme to the other" with regard to a woman's ability to attach the spendthrift interest of her husband).

This evolution of spendthrift trust law in Pennsylvania is consistent with the law's development in the majority of American jurisdictions.  As one treatise explained:

> [T]he trend of the last twenty-five years has been to limit and qualify spendthrift trusts, either by statute or by judicial decisions which create exceptions of the types described at a later point.  The spirit of nineteenth century individualism which originally validated these trusts is meeting opposition of a socially-minded character.

George G. Bogert & George T. Bogert, Handbook of the Law of Trusts § 40, at 154 (5th ed. 1973) (footnote omitted); see also

---

[17].  The Pennsylvania doctrine on spendthrift trusts apparently originated in the 1829 case of Fisher v. Taylor, 2 Rawle 33 (Pa. 1829) (Smith, J.).  See Wills – Spendthrift Clause – Legacies – Assignment, supra, at 1.

Jacob Mertens, Jr., Mertens Law of Federal Income Taxation §

49E.35 (1993) ("Inroads have been made upon the effectiveness of

spendthrift trusts by permitting certain classes of claims to be

satisfied from the income of such trusts . . . .").

C.

As we have noted, no Pennsylvania court has considered

whether section 157(c) should be adopted.[18]  In fact, only one

state's court apparently has decided the issue.  Evans & Luptak

v. Obolensky, 487 N.W.2d 521 (Mich. Ct. App.), appeal denied, 496

N.W.2d 289 (Mich. 1992), involved a situation similar to this

case.  In Evans, the trust beneficiary hired a law firm to secure

the best price for the primary assets of the trust, but failed to

pay the firm after the sale occurred.  The firm obtained a

judgment against the beneficiary, and a lower court denied

execution on the trust proceeds.  The Michigan Court of Appeals,

in adopting section 157(c), reversed and remanded.  The court

---

[18].  Kellogg claims the Pennsylvania Supreme Court rejected the
application of section 157(c) in In re Heyl's Estate, 43 A.2d 130
(Pa. 1945), which involved a trust established for two sisters by
their father.  One sister made an agreement with the trustee by
which the trustee would build her a house and she would pay for
it out of future trust income.  When the beneficiary revoked the
agreement, the court held that she had been without right to
assign her interest and thus the original agreement with the
trustee was void.  Because the burden of maintaining the house
fell back to the corpus of the trust, it impaired the other
beneficiary's interest, but that factor was not deemed sufficient
to justify violating the spendthrift provisions.  Id. at 131-32.
Although this case demonstrates the reluctance of state courts to
intrude upon spendthrift provisions, it does not reject the
Restatement position.  The case certainly does not fall under
157(c), because the trustee's action did not "preserve or
benefit" the beneficiary's interest in the trust.

noted that Michigan courts already had approved the other sections of the Restatement: "From the preceding analysis it is clear that the Restatement has been approved by every applicable appellate decision in Michigan since 1983 and that all the subsections of § 157 of the Restatement that were in issue in the cases were adopted with approval by either the Court of Appeals or the Supreme Court." Id. at 523.

Schreiber contends that, as in Evans, the state courts in Pennsylvania have adopted all the other subsections of section 157. Subsection (a), which permits trust assets to be reached to satisfy alimony or support claims, has been substantially -- if not entirely -- adopted in Pennsylvania. For more than sixty years, the Pennsylvania Supreme Court has permitted wives to reach the assets of spendthrift trusts to satisfy claims for support. See In re Moorehead's Estate, 137 A. 802 (Pa. 1927); see also In re Stewart's Estate, 5 A.2d 910 (Pa. 1939).

The district court noted, however, that the Pennsylvania Supreme Court refused to permit an out-of-state alimony judgment to reach assets of a spendthrift trust in Lippincott v. Lippincott, 37 A.2d 741 (Pa. 1944); thus, the district court said the Supreme Court implicitly rejected part of Restatement section 157(a). Schreiber, 849 F. Supp. at 391. Yet, at the time of Lippincott, Pennsylvania had no provision for alimony in an absolute divorce;[19] therefore, the Supreme Court's

---

[19]. Pennsylvania had no provision for alimony in an absolute divorce until the General Assembly enacted the Divorce Code of 1980. See 23 Pa. Cons. Stat. Ann. §§ 3101-05, 3701-07 (1991)

refusal to create a public policy exception for alimony payments should not be seen as a rejection of section 157 because the state at the time did not even recognize such payments.[20]

Furthermore, the state now has a broad statute that provides:
> Income of a trust subject to spendthrift or similar provisions shall nevertheless be liable for the support of anyone whom the income beneficiary shall be under a legal duty to support.

20 Pa. Cons. Stat. Ann. § 6112 (1975).  This statute apparently encompasses claims for alimony, as required by section 157(a). See 23 Pa. Cons. Stat. Ann. § 3103 (1991) (defining alimony as "[a]n order for support granted by this Commonwealth or any other state to a spouse or former spouse in conjunction with a decree granting a divorce or annulment"); Karen A. Fahrner et al., Bregy on Selected Sections of the Pennsylvania Probate, Estates and Fiduciaries Code § 6112, at 170 (Supp. 1993) ("[T]his part of the Lippincott decision would be different under the wording of present §6112 which makes spendthrift income liable to 'anyone whom the income beneficiary shall be under a legal duty to

(..continued)
(containing part of the Divorce Code of 1990, which replaced the 1980 version).

[20]. A law review article noted at the time of the Lippincott decision that its result was required because the state had no public policy in favor of support for former spouses:  "With the termination of the marriage the husband's duty of support, and the State's interest as a third party, ceases.  Thus the reason for denying a spendthrift trust ascendancy in such a situation ceases when public policy no longer exists."  Bigelow, supra, at 10.

support.'").  In fact, the language of the statute appears to go beyond even that required by the Restatement.[21]

As for Restatement section 157(b), the Pennsylvania Supreme Court cited the subsection with approval in Lang v. Commonwealth of Pa., Dep't of Public Welfare, 528 A.2d 1335, 1341-42 (Pa. 1987).  In Lang, the Supreme Court noted that "[a] support trust, though containing an implied spendthrift provision, can generally be reached to satisfy claims for necessary services rendered to the beneficiary.  See Restatement (Second) of Trusts, § 157 (1959)."  Because Lang involved a

---

[21].  We consider it significant that the Pennsylvania courts repeatedly have expanded this exception to the spendthrift trust rule.  In the late 1800s and early 1900s, the Pennsylvania Supreme Court refused to permit a wife to attach her husband's interest in a spendthrift trust.  See, e.g., Board of Charities v. Lockard, 48 A. 496, 496 (Pa. 1901) ("We agree entirely with all that has been said about the duty of the beneficiary to support his wife and child; but that does not authorize interference with the right of another individual to dispose of his own property as he may see fit."); see also Thackara v. Mintzer, 100 Pa. 151, 154-55 (Pa. 1882).  Yet, over the next several decades, the Pennsylvania courts did an "obvious about-face in the law" and began to permit attachments of spendthrift interests.  See Bigelow, supra, at 2.

Furthermore, commentators have stated that nationwide "[a] division of authorities exists on questions concerning whether the beneficiary's interest in a spendthrift trust can be reached by his wife and children to enforce claims for support, or by a former wife for an alimony claim."  William H. Wicker, Spendthrift Trusts, 10 Gonz. L. Rev. 1, 5 (1974).  We find it noteworthy that, unlike some jurisdictions which continue to reject claims for invasion of a spouse's spendthrift trust interest, Pennsylvania courts appear to be in accord with the Restatement position.  In fact, instead of Pennsylvania adopting the Restatement, one commentator suggested that the Restatement "adopted this Pennsylvania common law view."  Bigelow, supra, at 7.

support trust, however, the district court held the case did not stand for the proposition that interests in a spendthrift trust could be reached under section 157(b).  We disagree.  Section 157, by its terms, encompasses both spendthrift and support trusts.  The Lang court did not express any intention to distinguish between those types of trusts in determining the applicability of the Restatement; it simply cited section 157 with approval.

Furthermore, in Quigley Estate, 22 D. & C.2d 598 (Montgomery County Orphans' Ct. 1960), Judge Alfred L. Taxis, Jr., approved a beneficiary's assignment of her interest in a spendthrift trust to the Pennsylvania Department of Welfare.  The court, in upholding the "right of the Commonwealth to recover for furnishing the legatee with such fundamental necessities of life," expressly cited section 157 as support for its decision. Id. at 599; see also Wills – Spendthrift Clause – Legacies – Assignment, supra, at 2 (citing numerous Pennsylvania cases) ("The state may reach spendthrift trusts in reimbursement for the care of an income cestui who has become a public charge.").

Quigley Estate and similar cases adopt the reasoning not only of section 157(b), but also of section 157(d), which allows spendthrift trust interests to be reached in satisfaction of government claims.  Another Pennsylvania case upholding the application of section 157(d) is Scott Estate, 11 Pa. D. & C.2d 589 (Montgomery County Orphans' Ct. 1957), in which the Treasury Department served a writ of attachment on the executors of a trust to recover unpaid taxes of the beneficiary.  Judge Taxis

noted the applicability of section 157(d), but stated he did "not assume to decide the effectiveness of this attachment."  Id. at 592.  Nevertheless, relying in part on section 157(d), the court permitted the amount of the unpaid taxes to be retained, pending a resolution of the attachment.  Id. at 592-93.[22]

The district court stated that these cases demonstrated that Pennsylvania courts had not adopted the other subsections of section 157 in their entirety.  Yet, we believe this overlooks a crucial point.  The Michigan court, in adopting section 157(c), commented that "the Restatement has been approved by every applicable appellate decision in Michigan since 1983."  Evans, 487 N.W.2d at 523.  In Pennsylvania, the courts have approved the relevant Restatement subsections in every applicable case for a much longer period, with an understandable exception in Lippincott, 37 A.2d at 743-44.  We have found no Pennsylvania

---

[22].  For decades, commentators have cited Scott Estate for the proposition that Pennsylvania permits the United States to attach spendthrift trust interests to recover unpaid taxes.  See, e.g., Aker, supra, § 113.3, at 4 ("Despite existence of a spendthrift clause, the legatee's interest may be attached by the United States for delinquent income taxes . . . ."); Hunter et al., supra, § 6(k), at 52 ("attachment by U.S. for income taxes of legatee is valid").  Furthermore, it is doubtful whether Pennsylvania even has the power to shield interests in a spendthrift trust from federal tax liens.  See First Northwestern Trust Co. v. Internal Revenue Serv., 622 F.2d 387, 390 (8th Cir. 1980) (noting the "well established legal principle that the income from a spendthrift trust is not immune from federal tax liens, notwithstanding any state laws or recognized exemptions to the contrary"); United States v. Rye, 550 F.2d 682, 685 (1st Cir. 1977) ("In the area of spendthrift trusts, the courts have consistently held that a restraint on transferability, whether arising from the trust instrument or from state law, does not immunize the beneficiary's interest from a federal tax lien.").

case that has expressly declined to follow Restatement section 157 or even criticized it.  In fact, Pennsylvania courts routinely cite as authority for their decisions the Restatement of Trusts, including sections of the Restatement governing spendthrift trusts.[23]  Given the rationale underlying section 157(c), and the favorable treatment Pennsylvania courts have afforded other subsections of section 157 and the Restatement overall,[24] we believe the Pennsylvania Supreme Court would adopt section 157(c).[25]

---

[23].  In fact, a few years after publication of the original Restatement of Trusts in 1935, the Pennsylvania Supreme Court handed down In re Keeler's Estate, 3 A.2d 413 (Pa. 1939), a decision that "relie[d] principally" on the Restatement provisions on spendthrift trusts and on Erwin N. Griswold's book, Spendthrift Trusts.  See Trusts – Spendthrift – For Support – Assignment – Unrevoked, Fiduciary Rev., Mar. 1939, at 1.  For other examples of the Pennsylvania Supreme Court's citation to the Restatement on spendthrift trust issues, see Lang v. Commonwealth of Pa., Dep't of Public Welfare, 528 A.2d 1335, 1341–42 (Pa. 1987); Morton v. Morton, 147 A.2d 150, 152 (Pa. 1959); Murphey v. C.I.T. Corp., 33 A.2d 16, 18 (Pa. 1943); see also Hunter et al., supra, § 6(a)–(b), at 47–49; Robert Levin et al., Summary of Pennsylvania Jurisprudence: Trusts and Gifts Inter Vivos §§ 183–186, at 153–159 (1962).

[24].  Counsel for Kellogg suggested at oral argument that, even if we hold that Pennsylvania would adopt Restatement section 157(c), our decision might not apply retroactively to testamentary trusts, such as the one here, established before publication of the first Restatement of Trusts in 1935.  We disagree.  Section 157 appears to have been a distillation of existing law on the subject, not a radical change.  In fact, the most fundamental development in this area of Pennsylvania law on spendthrift trusts may well have been In re Moorehead's Estate, 137 A. 802 (Pa. 1927), which first permitted the invasion of a spendthrift trust interest on public policy grounds.  As noted, this case appeared almost a decade before the publication of the first Restatement and may even have influenced the adoption of section 157.  See supra note 21.  The decision in Moorehead's Estate, like most cases in this area, applied retroactively to the trust involved.  As the United States Supreme Court has noted, "As a

IV.

Although we hold that the Pennsylvania Supreme Court would adopt Restatement section 157(c), we still must determine whether the district court properly ruled that Pennsylvania courts would not apply the Restatement "under the circumstances of this case." Schreiber, 849 F. Supp. at 394.

A.

As an initial matter, we consider whether this type of case, involving an attorney seeking reimbursement for services rendered in connection with a trust interest, generally fits within section 157(c). We believe it does. In fact, as we have noted, the only case heretofore adopting section 157(c) involved a beneficiary who hired a law firm to secure the best price for the primary assets of a trust, but failed to pay the firm after

(..continued)
rule, judicial decisions apply 'retroactively.' Indeed, a legal system based on precedent has a built-in presumption of retroactivity." Solem v. Stumes, 465 U.S. 638, 642 (1984) (citation omitted).

[25]. The district court noted the Pennsylvania Supreme Court's admonition that the invasion of spendthrift trust assets should be an "extraordinary" remedy employed only when truly vital interests were at stake. Schreiber, 849 F. Supp. at 392 (quoting Lippincott v. Lippincott, 37 A.2d 741, 743 (Pa. 1944)). Although we have noted that the result of Lippincott would no longer be valid because of changes in the laws regarding alimony and invasion of spendthrift trust interests for support payments, see supra notes 19-21 and accompanying text, Pennsylvania courts have not backed away from the reasoning of Lippincott, i.e., that only "extraordinary" circumstances warrant invasion of spendthrift trusts. Endorsement of section 157(c), however, will not alter the extraordinary nature of the remedy, given the relatively few exceptions allowed by the Restatement and the limited number of cases that have cited to them.

the sale occurred.  Evans & Luptak v. Obolensky, 487 N.W.2d 521

(Mich. Ct. App.), appeal denied, 496 N.W.2d 289 (Mich. 1992).

Furthermore, one commentator cited this situation as an

example of the proper application of the principles underlying

section 157(c):

> Although an attorney, so far as payment
> for his general services is concerned, stands
> no better than an ordinary creditor in
> reaching the interest in a spendthrift trust,
> he is, nevertheless, entitled in New York to
> recover from his client's income for services
> rendered in connection with the client's
> interest in the trust.  These cases seem to
> be a proper application of the principle that
> the beneficiary's interest in a spendthrift
> trust may be alienated for the purpose of
> preserving or improving its value.

Erwin N. Griswold, Spendthrift Trusts § 346, at 409-10 (2d ed.

1947) (footnotes omitted); see also Scott & Fratcher, supra, §

157.3, at 209.  But see Griswold, supra, § 346, at 410 (noting

that "attorneys have not been so successful" in some states in

recovering under this theory).

B.

In considering the applicability of section 157(c), the

district court conducted an evidentiary hearing and held that

Pennsylvania courts would not apply Restatement section 157(c) to

this case.  Schreiber, 849 F. Supp. at 384, 394.  Specifically,

the court determined that, because Rodman Wanamaker had expressly

indicated he wished the trustees to remain free from interference

by the beneficiaries,[26] invasion of the spendthrift trust

---

[26].  See Schreiber, 849 F. Supp. at 393 (quoting provisions of the will).

interest here would "negate the wishes of Rodman Wanamaker."  Id. at 394.[27]

The district court received evidence on this issue, and we consider its decision to be a factual finding.  Yet, we believe the court applied an incorrect legal standard to decide this aspect of the case.  There is nothing in the Restatement providing that, in applying the section 157 exceptions to the spendthrift rule, the testator's intent should be considered.

If a testator's intent controlled whether an exception to spendthrift protection was allowed, then none of the Restatement section 157 exceptions could ever apply.  This is so because if a testator had intended the result mandated by the

---

[27]. The district court divided Schreiber's representation of Kellogg into two time periods: representation during the sale of the Wanamaker stock and representation during the subsequent surcharge action against the trustees.  As for the representation during the sale of the stock, the district court held that Schreiber had discharged Kellogg for all liability for that period.  Id.  Because Schreiber did not appeal this portion of the district court's ruling, the only representation at issue is Schreiber's work for Kellogg during the surcharge action against the trustees.

Kellogg contends that the entire fee issue is barred by the doctrine of res judicata, because the Montgomery County Orphans' Court already awarded Schreiber fees in connection with his representation of Kellogg.  See supra part I.  As the district court indicated, however, the Orphans' Court fee award involved Schreiber's representation during the sale of the stock only, not his later work on the surcharge action.  See Schreiber, 849 F. Supp. at 384-85.  As we have noted, Schreiber received more than $200,000 for his representation involving the sale of the stock: $117,000 in counsel fees and interest awarded by the Montgomery County Orphans' Court and $88,000, plus counsel fees and interest, from a judgment obtained against another attorney involved in the stock sale for breach of a fee-sharing agreement. See supra part I.

section 157 exceptions, then presumably he would have said so in the will, and there would be no need to look beyond the will for policy reasons that warrant invasion of the trust. Despite the usual importance of a testator's intent in construing the terms of a will or trust,[28] Pennsylvania courts have not hesitated to disregard such intent when public policy requires. See, e.g., In re Moorehead's Estate, 137 A. 802, 806 (Pa. 1927) ("A testator has a right . . . to dispose of his own property with such restrictions and limitations not repugnant to law, as he sees fit, and his intentions ought to be carried out, unless they contravene some positive rule of law or are against public policy.").[29]

Thus, we believe the district court must determine whether Schreiber's work for Kellogg did "preserve or benefit the

---

[28]. See supra part II.A.

[29]. See also Morton v. Morton, 147 A.2d 150, 151 (Pa. 1959) ("It has long been our public policy that the spendthrift provisions of a trust cannot defeat the claims of the wife of a beneficiary for maintenance and support."); In re Stewart's Estate, 5 A.2d 910, 914 (Pa. 1939) (citation omitted) ("Since we have declared that spendthrift trusts are against public policy in this State as to claims of wives for maintenance and support, they are entitled to recover against the beneficial interest of their husbands as though no spendthrift clause was contained in the will or deed creating them."); Thomas v. Thomas, 172 A. 36, 41 (Pa. Super. Ct. 1934) ("To the extent that the cases prior to the decision in Moorehead's Estate differ therefrom, the former must be considered as overruled. It is a step in the right direction and consonant with public policy and good morals."); Levin et al., supra, § 183, at 155 ("A spendthrift or other protective trust cannot be established in contravention of statute or public policy.").

interest of the beneficiary."[30]  Schreiber contends that this analysis does not require the court to decide whether an actual preservation or benefit to the beneficiary's interest occurred, but instead whether a good-faith attempt to preserve or benefit the interest was made.[31]

We disagree.  By its terms, section 157(c) does not require merely an action that might preserve or benefit the beneficiary's interest, but instead mandates that the action achieve the result of preserving or benefitting the interest in the trust.  See § 157(c) ("the interest of the beneficiary can be reached . . . for services rendered and materials furnished which preserve or benefit the interest of the beneficiary"); see also Griswold, supra, § 366, at 445 ("[T]he creditor should be allowed to recover at least to the extent that his labor and materials have improved the value of the beneficiary's interest.").

The purposes behind section 157(c) support this interpretation.  Section 157(c) permits the attachment of spendthrift interests because a beneficiary "should not be permitted to profit at [his creditor's] expense."  Scott & Fratcher, supra, § 157.3, at 208.  Similarly, the Restatement notes that section 157(c) is necessary because "the beneficiary

---

[30]. The parties dispute whether the district court made a finding whether Schreiber did "preserve or benefit" Kellogg's interest.  We do not believe the district court made such a determination.

[31]. Evans & Luptak v. Obolensky, 487 N.W.2d 521, 523 (Mich. Ct. App.), appeal denied, 496 N.W.2d 289 (Mich. 1992), raised this issue but left it undecided.

would be unjustly enriched if such a claim were not allowed." Restatement § 157(c) cmt. d. In cases in which the beneficiary's interest is not actually preserved or benefitted, however, the beneficiary has received no "profit" at all; thus, he cannot have been "unjustly enriched." We believe this interpretation is consistent with the Pennsylvania Supreme Court's admonition that the invasion of spendthrift trust interests should be an "extraordinary and drastic remedy." Lippincott v. Lippincott, 37 A.2d 741, 743 (Pa. 1944).

Nevertheless, Schreiber contends this interpretation would emasculate one of the policies underlying section 157(c), namely, ensuring that needy beneficiaries obtain the necessary resources to protect their interests in a trust. Without a standard allowing recovery for "good-faith" attempts, Schreiber argues, few attorneys or other creditors would ever agree to help beneficiaries in these circumstances. Schreiber cites no legal authority for this proposition.[32] We believe his argument is answered by the widespread acceptance of the most common practice designed to ensure that those in need obtain proper representation: contingency fee agreements, which require a favorable result to generate fees. As one treatise noted,

---

[32]. In fact, the district court's August 3, 1993 findings appear to contradict the basis for Schreiber's argument. The court noted that Schreiber advised Kellogg not to sue the trustees because "it would be a long hard fight to prevail in any surcharge action." Tr. at 6. The court also stated that none of the other members of the Wanamaker family supported Kellogg's surcharge action against the trustees. Id. at 8. Yet, Schreiber still agreed to represent Kellogg in the surcharge action.

"Contingency arrangements ideally have the advantages of encouraging quality work and discouraging excessive work, because the attorney's compensation is directly tied to the quality of the outcome . . . ."  Robert E. Litan & Steven C. Salop, Reforming the Lawyer-Client Relationship Through Alternative Billing Methods, 77 Judicature 191, 195 (1994).  This approach is also similar to that embodied in the various federal fee-shifting statutes:  Attorneys can recover their fees in certain cases, but only when they represent the "prevailing party."  See, e.g., 28 U.S.C. § 2412 (1988 & Supp. V 1993) (permitting award of attorneys' fees to "prevailing party" under Equal Access to Justice Act); 42 U.S.C. § 1988 (Supp. V 1993) (allowing award of attorneys' fees to "prevailing party" in civil rights cases).  Like Restatement section 157(c), these statutes reward only those efforts that actually succeed in benefitting a plaintiff, not those that are well-intentioned but fail.  See Baumgartner v. Harrisburg Hous. Auth., 21 F.3d 541, 548 (3d Cir. 1994) (noting the Supreme Court has adopted "a result-oriented approach" to fee awards).  Accordingly, we do not believe it unfair to require Schreiber to demonstrate that the surcharge action actually "preserve[d] or benefit[ted]" Kellogg's interest in the trust.[33]

This construction of section 157(c) does not mean that

---

[33]. Whether creditors may recover for a non-pecuniary preservation or benefit to a trust interest is a more difficult question.  We note that in other contexts we have not always required attorneys to prove a pecuniary benefit in order to recover fees.  But we have required that the benefit must be real.  See, e.g., Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1310-13 (3d Cir. 1993).

those who unsuccessfully attempt to benefit an interest in a spendthrift trust should not be paid for their services. It merely means that the equities of the situation are not so far in their favor as to warrant the "extraordinary and drastic remedy" of an invasion of a spendthrift trust interest. Such creditors still may pursue alternative measures to collect debts.

V.

Based upon the foregoing, we will reverse and remand this case to the district court for a determination of whether Schreiber's work for Kellogg did "preserve or benefit the interest of the beneficiary," within the meaning of Restatement § 157(c). In all other respects, we will affirm the judgment of the district court.

Palmer K. Schreiber v. Christopher G. Kellogg
No. 94-1551

LEWIS, Circuit Judge, concurring.

I would have found that the Wanamaker will's spendthrift protection did not protect from attachment Kellogg's interest in the Wanamaker trust. Furthermore, I am somewhat skeptical about whether the courts of Pennsylvania would adopt section 157(c) of the Restatement (Second) of Trusts. However, the majority provides a well-reasoned and defensible rationale

with respect to both of its conclusions, and the issues being far from clear, I concur.  On remand Schreiber may receive at least a portion of the money Kellogg owes him, and I am sure that if we are wrong about section 157(c), the courts of Pennsylvania will let us know in due course.